ISAACSON, Appellant, v. PARKER et al., Respondents.
ISAACSON, Appellant, v. PARKER et al., Respondents.
ALATALO, Appellant, v. PARKER et al., Respondents.
ALATALO, Appellant, v. PARKER et al., Respondents.

(2 Cases, 4 Appeals.)

(176 N. W. 653.)

(File Nos. 4591, 4596, 4592, 4593.   Opinion filed February 19, 1920)

1.  Taxation—Consolidated School District, Illegal Levy By—Recovery Back, Annulment of Consolidated District, Enjoining Further Levy—Fraudulent Consolidation, Non-benefit to Outlying Districts, Quo Warranto as Remedy, Discretion Re.

     Complaints alleging invalidity of proceedings whereby two common school districts and an independent school district were declared a consolidated school district, under Laws 1913, Ch. 194, as amended, to recover back taxes already paid under levy by such consolidated district, for annulment of the purported consolidated district, and to enjoin further levy and collection of taxes by the purported consolidated district, and alleging that the proposition of consolidation was fraudulent and regardless of benefits to outlying districts and to shift burden of taxation resting upon an independent district to the rural districts, quo wararnto is applicable as a remedy, and state's attorney should have permitted bringing of the action, and upon his refusal the attorney general should have granted permission; that the doctrine that the right of refusal to grant such permission is an arbitrary discretion, is untenable.

2.  Quo Warranto—Consolidated School District, Invalid Formation Of—Consolidation Neither De Jure Nor De Facto, Whether Quo Warranto Exclusive Remedy.

     Where, as in the present case (under Laws 1913, Ch. 194), relating to common schools and to procedure in organizing school districts, there was no law authorizing consolidation of

an independent school district with a common school district, the purported consolidated district was neither a de juro nor a de facto corporation; hence the remedy by quo warranto for recovery back of taxes paid pursuant to levy by such purported consolidated district, to annul consolidation proceedings, and to enjoin further tax proceedings, was not exclusive.

3. Corporations—School District Corporations—Non-de Jure Corporation, Whether De Facto.

It is a cardinal principle that there cannot be a corporation de facto when there cannot be one de jure.

4. Schools—Consolidated School Districts—Consolidated City With Rural Districts—Two Mile Limit—Statute, Legislative Policy Re, Construed.

Beginning with first general school law after statehood, and continuing at least until enactment of Laws 1919, Ch. 170, (unless Laws 1913, Ch. 194, is to be construed to contrary) the Legislature evinced steadfast intention not to allow city schools, (or independent school districts) to absorb outlying rural precinct except on consent of majority of electors of the outlying district, nor to absorb an outlying district (except in peculiar circumstances) beyond two-mile limit without unanimous consent of electors of such territory; construing Laws 1891, Ch. 56 Subd. Ch. I. V., Sec. 4; Laws 1897, Ch. 57; Laws 1899, Ch. 78; Laws 1901, Ch. 113, Subd. Ch. 1, Subd. 4; Sec. 2410 Rev. Pol. Code 1903; Laws 1903, Ch. 133; Laws 1907, Ch. 135, Sec. 176; Sec. 753,6 Rev. Code 1919.)

5. Schools—Consolidating School District—Statute, Whether Embracing Independent District—Electors' Petition, Three-fifth Vote, Effect Re Statutory Interpretation.

Since, under Laws 1913, Ch. 194, Sec. 3, as amended by Laws 1915, Ch. 164, and Laws 1917, Ch. 218, relating to consolidation of school districts, three-fifths of voters in proposed district may effect the consolidation in face of unanimous vote in outlying territory, and since, if the act applies to independent school districts, the only effect upon ability of an independent school district to absorb rural districts and thus compel latter to assist in support and maintenance of tht independent district, is the provision that 25% of the electors of the outlying district must petition for the consolidation and Superintendent of Public Instruction must approve, and the independent district not being limited by county lines, a construction of Sec. 1 of said act, such as would nullify the long continued legislative policy that independent districts should not ride roughshod over rural districts, will not be adopted, unless legislative intent to abandon such policy is clearly manifest.

6. Schools—Consolidating School Districts, Whether Embracing Independent District—"Two or More School Districts of Any. Kind," Construed—Two School Systems, Effect.

Under Laws 1913, Ch. 194, Sec. 1, providing that for purpose of promoting a better condition in rural schools and to encourage industrial training, including elements of agriculture, manual training and home economics, "two or more school districts of any kind" may consolidate by formation of a new district, that an existing district or portion thereof may organize as a consolidated district, or may consolidate with one or more other districts or parts thereof, etc., **held,** that the words "two or more school districts of any kind" refer only to rural schools, and does not embrace independent school districts; regard being had to the former and existing two systems of rural schools, i. e. those under school district system and those under school township system (compilers note to Sec. 1845, Comp. L. 1887, and Laws 1907, Ch. 135, Secs. 66-72), and to Laws 1903, Ch. 127, providing for possible consolidation of school townships; that those two systems, and the high school act, were the occasion for the use of above quoted words. Moreover, the language in Sec. 1; "An existing district may organize as a consolidated district," when applied to a rural district, has meaning, since added powers are given under the consolidation act, while as applied to an independent district it has none, because Sec. 3 of original act and each of the amendments contains the proviso that a consolidated district shall upon formation "become an independent district with the powers, privileges and duties now conferred by law upon independent districts;" and the section will not be construed as futile in this respect, since such ascribed intent of Legislature would not constitute "promoting a better condition in rural schools" nor "tend to increase efficiency of the common school system;" for, under such interpretation, school children from former rural districts would be compelled to attend city school, and any new buildings would be there constructed, since the majority vote would so direct, all tending to detract from efficiency of rural schools, whose attractiveness and efficiency was the chief purpose of the consolidating act, so that farm children would contentedly remain there and not follow lure of city.

7. **Schools—Consolidated School Districts—Embracing Independent District, Consoildated Powers Versus Independent District—Statutes.**

Under Laws 1913, Ch. 194, Secs. 1-3, providing for consolidation of school districts, the consolidated district, whether comprised solely of a former independent district or of independent district and rural districts, has less power, privileges and duties than the former independent district had; since, under Laws 1907, Ch. 135, Sec. 190, independent districts are self-governing under boards of education, and County Superin-

tendent has no direct supervision over them where population is 1000 (Sec. 31), while under the consolidation act, and as amended, consolidated district must secure majority vote to authorize expenditure of mcre than $200 for land purchase, independent districts not being so hampered; again, independent district elections are held the same as general elections, while in common school district elections, and those contemplated in Sec. 3 of consolidation act, they are held under New England Town Meeting Plan; it being inadmissible that independent school district should hold elections under latter plan.

8. **Statutes—School Districts, Consolidation Of—Curative Act, Whether Affecting Independent Districts, Limitation of to Errors Under Granted Powers.**

Laws 1919, Ch. 4, legalizing and validating acts and proceedings relative to organization and incorporation of consolidated school districts organized under Laws 1913, Ch. 194, and amendatory acts, "notwithstanding any irregularities and erors, clerical or otherwise in the organization or incorporation thereof, or any defects in th estatute authorizing such organization," etc., and declaring such consolidation to have existed "as independent consolidated school districts," and rectifying - and validating official acts and proceedings within scope and school districts and their officers"—does not embrace consolidations of school districts other than under said acts, and does authority of the statutes "relating to independent consolidated not apply to independent school districts; that the curative act sought to cure errors and defects under powers granted, not to supply new and hiterto ungranted powers.

9. **Appeals—Orders Sustaining Demurrers—Notice of Appeal From Earlier Order, Undertaking Embracing Later, Amendment of Notice, Supreme Court Power Re.**

Where demurrers, first to original then to amended complaint, were severally sustained, and notice of appeal inadvertently referred only to the earlier order, but the undertaking referred to the correct order, held, that leave to amend appeal notice will be granted by Supreme Court; authority to so order being undoubted.

Appeal from Circuit Court, Hamlin County. Hon. JOSEPH II. BOTTUM, Judge.

Actions by Isaac Isaacson, against Elliott A. Parker, as Superintendent of Schools of Hamlin County, South Dakota, C. P. Leonard and others as the Board of Education and Directors of Hayti Independent School District No. 2 of Hamlin County, South Dakota, Hayti Independent Consolidated District No. 2 of Hamlin County, South Dakota, and H. L. Stearns

as County Treasurer of Hamlin County, South Dakota (case No. 4591); same against same (case No. 4596); and two appeals involving separate orders sustaining demurrers, one to original complaint, the other to the amended complaint; and by John Alatalo, against same (case No. 4592); and same against same (case No. 4593); being two further appeals involving similar separate orders; both actions being for recovery of taxes paid under protest; from which orders the respective plaintiffs appeal. Reversed, and causes remanded for further proceedings.

*Eugene P. Campbell,* and *Loucks, Hasche &. Foley,* for Appellant.

*M. J. Russell,* and *F. J. Benthin,* for Respondent.

(2) To point two of the opinion, Respondents cited, re quo warranto as the exclusive remedy: Evans v. Anderson (Minn.), 155 N. W. 1040.

(3) To point three of the opinion, Appellants cited: Felix v. Board (Kan.), 62 Pac. 667, 84 A. S. R. 424; Penn v. Wheeling Co. (U.S. ), 15 L. Ed. 449; Felix v. Board of County Commissioners, 84 Am. St. Rep. 427.

Respondents submitted that: The legislature made a distinction in Chap. 135 of Laws 1907, between independent districts and school districts for a purpose, but the purpose did not take into consideration the consolidated school law, as this state had no consolidated school law until 1913.

GATES, J. These two actions were begun on February 15, 1919, for the recovery of taxes paid under protest, pursuant to the provisions of chapter 289, Laws 1915. The ground of recovery is the alleged invalidity of proceedings begun in 1917 whereby two certain common school districts and an independent school district in Hamlin county were declared to be a consolidated school district by the name of "Hayti Consolidated School District No. 2 of Hamlin County," under chapter 194, Laws 1913, as amended. The taxes sought to be recovered purport to have been levied by the consolidated district. In the Isaacson case the plaintiff also alleges that he was a school director and patron of one of the common school districts. In both cases an annulment of the purported consolidated district is sought, and an injunction against the further levy and collection of

taxes by the purported consolidated district. Among other grounds of illegality it is alleged that the purpose of the consolidation was fraudulent, and without regard to the benefits to the outlying districts, and that the purpose was the shifting of the burden of taxation resting upon the independent district to the rural districts.

[1] The amended complaints also allege the bringing of an action in prohibition to prevent the county superintendent from making the order of consolidation, and its dismissal because the acts sought to be restrained were ministerial (State ex rel. Isaacson v. Parker, 40 S. D. 102, 166 N. W. 309); an attempt to secure the consent of the state's attorney to bring quo warranto proceedings, and the refusal of the state's attorney, although indemnity for costs was furnished; an attempt to secure the like permission from the Attorney General (Wright v. Lee, 4 S. D. 237, 55 N. W. 931), and its refusal. We think the state's attorney should have permitted the bringing of the action, and that upon his refusal the Attorney General should have granted such permission. 22 R. C. L. 702. We do not subscribe to the doctrine of some courts that such right of refusal is an arbitrary discretion.

The parties defendant were the county superintendent of schools, the county treasurer, the consolidated district, and the members of the board of education thereof. Two separate demurrers were interposed to the complaint in each case, which were sustained. The plaintiffs appeal from the separate orders; hence the four titles above. We here consider them together.

[2, 3] Much is said in the briefs on both sides of the cases as to the authority of the plaintiffs to attack the formation of the district, except by way of quo warranto; but we do not deem a discussion of those matters necessary to the decision to which we have arrived, because we determine that chapter 194, Laws 1913, did not apply to independent school districts, hence there was no law authorizing the consolidation of an independent school district with a common school district. The purported consolidated district was therefore neither a de jure nor a de facto corporation; hence the remedy by quo warranto was not exclusive. "It is a cardinal principle that there cannot be a

corporation de facto, when there cannot be one de jure." 7 R. C. L. 61.

Briefly stated, the main contention of appellants is that chapter 194, Laws 1913, does not authorize the consolidation of a common school district with an independent school district. On the other hand, the respondents contend that such consolidation is within the purview of said chapter, but that, even if there be doubt in regard thereto, the Legislature by chapter 4, Laws 1919, legalized the formation of the consolidated district.

[4] Beginning with the first general school law after statehood, and continuing at least until the enactment of chapter 170, Laws 1919 (unless the consolidation law is to be construed to the contrary), the Legislature has evinced a steadfast intention not to allow city schools (or perhaps more accurately stated, independent school districts) to absorb outlying rural precincts, except upon the consent of at least the majority of the electors of the outlying district, nor to absorb an outlying district (except in peculiar circumstances) beyond the two-mile limit without the unanimous consent of the electors of such territory. Section 4, subc. IV, c. 56, Laws 1891; § 4 subc. X ch. 57, Laws 1897; chap. 78, Laws 1899; section 4, subc. XI, c. 113, Laws 1901; section 2410, Rev. Pol. Code 1903; chapter 133, Laws 1903; section 176, c. 135, Laws 1907; section 7536, Rev. Code 1919.

[5] Under the consolidated district act, as amended, three-fifths of the voters in the proposed district may effect the consolidation in the fact of the unanimous vote of the voters of the outlying territory. If the act applies to independent school districts, the only check upon the ability of an independent district to absorb rural districts, and under the guise of a consolidated district to compel a rural district to assist in the support and maintenance of the independent district, is the provision that in the first instance 25 per cent. of the electors of the outlying district must petition for the consolidation and the superintendent of public instruction must approve. Nor under that law is the independent district limited by county lines. Just so long as 25 per cent. of the electors of an outlying district will petition and the state superintendent will approve, three-fifths of the voters of the proposed district may extend, and keep on extending, the boundaries of the district indefinitely, and

the wishes of the remaining 75 per cent. of the electors of the outlying district may be entirely ignored.

[6]  Under these circumstances we do not think we should give such a construction to section 1, c. 194, Laws 1913, as would nullify the long-continued and emphatic legislative policy that independent districts should not ride roughshod over rural districts, unless the intention of the Legislature of 1913 to abandon such policy is clearly manifest. The first act we find with reference to the consolidation of school districts and the elimination of the old districts is the act in question, although chapter 127, Laws 1903, provided for a possible consolidation of school townships for the purpose of a township high school, without destroying the old districts.

Section 1, c. 194, Laws 1913, was as follows:

"For the purpose of promoting a better condition in rural scl ools and to encourage industrial training, including the elements of argiculture, manual training and home economics, two or more school districts of any kind may consolidate by the formation of a new district. An existing district may organize as a consolidated district; a portion of an existing district may organize as a consolidated district, or may consolidate with one or more other existing districts or with part or parts of same by the formation of a new district."

It is the contention of respondents that the words "two or more school districts of any kind" are there used in their broad sense; hence that they include independent school districts. It is the contention of appellants that those words manifestly refer only to the common or rural schools, because of the title of said act and other amendatory acts, and because of the context. The title to the act of 1913 was as follows:

"An act entitled 'An act to increase the efficiency of the common school system of this state and to promote instruction in the elements of agriculture and home economics and pre-scribing the method of procedure in organizing such districts.' "

The title to chapter 164, Laws 1915, which amended section 3 of the 1913 act, was as follows:

"An act entitled 'An act to amend section 3, chapter 194, of the Session Laws of 1913, relating to common schools.' "

The title to chapter 218, Laws 1917, which further amended said section, was as follows:

"An act entitled 'An act to amend section 3, chapter 194, of the Laws of 1913, as amended by chapter 164 of the Laws of 1915 relating to common schools.'"

The title to chapter 176, Laws 1915, which amended section 9 of the 1913 act was as follows:

"An act entitled 'An act to amend section 9 of chapter 194 of the Session Laws of 1913, relating to common schools.'"

There has always been a well-defined distinction observed by the lawmakers with reference to enactments concerning the rural schools on the one hand and independent school districts on the other, and it would seem, even upon the most casual inspection of the above titles, that the Legislature was intending to deal with the common or rural schools in those several enactments. In Colfix v. Caldwell, 37 S. D. 243, 157 N. W. 661, by reason of the context, we construed the words "in any school district in such county" to refer solely to rural schools, and not to independent school districts.

We think the same principle is applicable here. There is a consistent explanation of the meaning of the words "two or more school districts of any kind," if they refer only to rural schools. There grew up under territorial statutes, and still exist, two systems of rural schools; those under the school district system, and those under the school township system. See compiler's note following section 1845, Comp. L. 1887, and sections 66-72, c. 135, Laws 1907. Again, there is the township high school act above referred to. We are of the opinion that those two systems and the high school act were the occasion for the use of the above words.

There are several things about the act that further indicate that it was not intended to apply to independent school districts. Section 1 says:

"An existing district may organize as a consolidated district."

As applied to a rural district, the clause has meaning, because added powers are given under the consolidation act. As applied to an independent school district, it has none, because

section 3 of the original act and each of the amendments contains the clause:

"Provided, that a consolidated district shall, upon its formation, become an independent district with the powers, privileges and duties now conferred by law upon independent districts."

In other words, after going through the trouble of effecting a consolidation with itself, the existing district as sole applicant, if an independent district, is just where it was before. One can scarcely credit the Legislature with so obviously futile an intent. Can any one seriously claim that the result in such case would constitute "promoting a better condition in rural schools," or that it would tend "to increase the efficiency of the common school system of the state"?

[7] But as a matter of fact (and this strengthens rather than diminishes the force of the argument) the consolidated district, whether comprised solely of a former independent district or of an independent district and rural district, does not have as great powers, privileges, and duties as the former independent district had. Independent districts are self-governing. Section 190, c. 135, Laws 1907. The county superintendent of schools has no direct supervision over them, at least over those having a population of 1,000. Section 31, c. 135, Laws 1907. Under the consolidation act, the state superintendent prepares "suggestive courses of study," whatever that may mean. He may appoint a supervisor, who, with the county superintendent, exercises supervision over the consolidated school. Section 5, c. 194, Laws 1913. By section 9 of the act, and as amended, the consolidated district must secure the majority vote of the voters to authorize the expenditure of more than $200 for the purchase of land. Independent school districts are not so hampered. Can it be fairly inferred that under such circumstances the Legislature had any intention of making the act applicable to independent school districts?

Again, the elections held in independent districts are held in the same manner as general elections, while ordinary elections in common school districts and the election contemplated in section 3 of the consolidation act are held under the New England town meeting plan. It is absurd to think that the

Legislature intended that a district like the independent school district of Aberdeen, for instance, should hold an election under such plan.

But in our opinion the strongest point against the construction contended for by respondents is that the consolidation of a rural district with an independent district will not tend to promote "a better condition in rural schools" and will not "increase the efficiency of the common school system." The majority of the voters of the consolidated district will prevail. If a suitable school already exists in the independent district, there will be no outside building. The school children from the former rural district will be compelled to go to the city school. If a new building is built, it will be built where the majority says, viz., in the city. That may, and probably will, result in better schooling for the pupil; but it will detract from rather than increase the efficiency of rural schools. It will do away with them. If we mistake not the chief purpose of the consolidation act, it was to make the rural schools attractive and efficient, so that the children of the farms would be content to remain on the farms and not follow the lure of the city.

For these reasons we are firmly of the opinion that the Legislatures of 1913, 1915 and 1917 did not intend the consolidation law to apply to independent school districts, and we think the Code revisers in section 7569, Rev. Code 1919, clarified the legislative intent. We are not now concerned with what the Legislature intended by chapter 170, Laws 1919, because all of the proceedings came under the laws of the legislative sessions last above referred to.

[8] But it is strongly urged that chapter 4, Laws 1919, has cured the defects and alleged illegalities in the formation of Hayti Independent Consolidated School District No. 2 of Hamlin county, and has legalized the formation of the district. The curative act says:

"That all acts and proceedings relating and pertaining to the organization and incorporation of any consolidated school district organized under the provisions of chapter 194, Laws of 1913, and acts amendatory thereof are hereby legalized and validated, as of the date when said consolidated school districts were organized and incorporated under said chapter 194, Laws

of 1913, notwithstanding any irregularity or errors, clerical or otherwise, in the organization and incorporation thereof, or any defect in the statute authorizing such organization and incorporation; and all of said consolidated school districts are hereby declared to have existed as independent consolidated school districts under the laws of the state of South Dakota since said organization and incorporation, and all acts of the officers of said school districts and all proceedings for bonding and taxation had therein, within the proper scope and authority of the statutes of this state relating to independent consolidated school districts and their officers, are hereby ratified and validated, notwithstanding any errors, clerical or otherwise, in the organization and incorporation of said districts."

Assuming for the purposes of this case that the Legislature of 1919 might have framed an act broad enough to have legalized the formation of this district, even though the consolidation act had clearly and expressly said that it did not apply to independent school districts, yet we find in the curative act no legislative intent to go beyond the scope of the consolidation act. If, as we hold, that act did not apply to independent school districts, there is nothing in the curative act that shows a legislative intent that it should apply to independent school districts. It is only irregularities and "errors, clerical or otherwise," or "a defect in the statute," that are cured. It sought to cure errors and defects under powers granted, not to supply new and hitherto ungranted powers.

[9] In the Isaacson case separate demurrers were sustained to the original complaint. Plaintiff amended the complaint. Separate demurrers wese then sustained to the amended complaint. In drawing the notices of appeal, reference was by inadvertence made to the earlier order; but the undertakings on appeal, referred to the correct order. Appellant sought leave to amend. Respondents resisted. We deferred the matter until the determination of the merits. We have no doubt as to our authority and duty to permit amendments in the notices of appeal, so that they may refer to the later order. The decision in Aldrich v. Pub. Op. Pub. Co., 27 S. D. 589, 132 N. W. 278, has no application to this state of facts.

The orders appealed from are reversed, and the causes remanded for further proceedings in harmony with this opinion.