ALATALO, Appellant, v. SHAVER, et al., Respondents.

ISAACSON, Appellant, v. SHAVER, et al., (LEONARD, et al.,
Respondents.)

(2 cases, 4 appeals.)

(186 N. W. 872.)

(File Nos. 4946 and 4947, 4948 and 4949.    Opinion filed January
    '   31, 1922.    Rehearing denied March 10, 1922.)

1. Appeals—Error—Former Opinions as Law of Case, Unless Cura-
    tive Acts Validate Invalid Consolidated District Proceedings.

        The former opinions of this Court in these cases (40 S. D.
    102, 42 S. D. 562, 43 S. D. 142) having announced the law of
    this case, the orders appealed from must be reversed unless by
    passage of certain curative acts the abortive attempt to incor-
    porate the school district in question has been validated.

2. Schools—School Districts—Curative Act Re Invalid Consolidation,
        Effect as to Judicial Proceedings Before Final Judgment,
        Rule—Curative Laws as Non-executive or Judicial, Plenary
        Power Re.

        Laws Special Session 1920, Ch. 47, purporting to authorize
    organization of consolidated school districts through union of
    an independent school district and one or more other school
    districts and to validate all acts and proceedings relating and
    pertaining to organization of consolidated school districts or-
    ganized or attempted to be organized under the laws under
    which it had been attempted to organize the school district
    herein involved, and to validate such organizations notwith-
    standing irregularities, omissions and defects in proceedings
    taken, or any want or lack of power to authorize same under
    former statute, and validating all acts of officers of said or-
    ganization including tax proceedings, is effective as to all acts
    done under said attempted organizations prior to a final judg-
    ment in an action seeking to adjudge them judicially defective;
    that (following Hodges v. Snyder, 43 S. D. 166) it is the
    nature and purpose of a curative act, rather than the fact
    of pending actions or prior judgment, that determines validity
    of curative act, save as such act cannot be effective to destroy
    a vested right created by a final judgment.   So held, where the
    judicial proceeding in question had not preceded the final judg-
    ment; that the curative act in question is purely legislative in
    character, being neither executive nor judicial; and Legislature
    had plenary power in its field, subject only to constitution-l
    limitations or prohibitions.

3. Same—Void School District Consolidation Proceedings, Whether
        Curative Act Validates—Extent of Legislative Validation
        Power Re.

Even though proceedings taken to organize a consolidated school district embodying an independent school district, were absolutely void, yet a curative act purporting to validate such proceedings is not in itself void therefor, since, where there is no constitutional prohibition, Legislature may validate by curative act any proceeding it might have authorized in advance; such legislative power being unlimited save such as is imposed by constitutional restrictions or limitations.    So held, even though no action to determine invalidity of the act under which the attempted organization was made, were pending when curative act was enacted.

4.    Statutes—Curative Act Re Invalid School District Consolidation— Act Validating Particular Proceedings and General Invalid Proceedings, Whether Special Legislation—Constitution.

Laws Special Session 1920, Ch. 47, amending Sec. 7569, Code 1919, as amended by Laws 1919, Ch. 170, so as to make it lawful for two or more school districts of any kind to consolidate, etc., including incorporating of an independent district with part or all of one or more other districts, and validating all acts and proceedings theretofore had under Code 1919, Chap. 5, (formerly Laws 1913, Ch. 194) and acts amendatory thereto, notwithstanding any irregularities or errors, omissions or defects, in such organization, etc., or any defects, ambiguity, or omission, want or lack of power in the statute authorizing such organization and incorporation, and in all cases where a former independent school district and any part or all of one or more other districts have proceeded to organize as a consolidated district, etc., notwithstanding errors, etc., in such organization or incorporation, and declaring all said consolidated districts to have existed as independent consolidated school districts, etc.,—is a geenral law, and is not "special" within Const., Art. 3, Sec. 23, prohibiting enactment of special laws in certain cases; that curative statutes applying to all places, things, or subjects affected by the conditions which are to be remedied, are not special acts within meaning of constitutional provisions.

5.    Same—Validating Act, Whether Validating Preceding Tax Proceeding—Case of Taxpayers' Right to Notice of Assessment Distinguished.

Said curative act (Laws Special Session 1920, Ch. 47) was effective as validating school district tax levies and payments thereunder had before enactment of said act.    So held, it appearing that the territory in question has been functioning as a consolidated school district, teachers having been hired and school privileges provided for children; bonds may have been voted and issued, and their proceeds used for benefit of such territory.    That whatever was done in any of the territories

so attempted to be created as consolidated districts embracing an independent district, which a lawful district might have done, cast upon property holders therein the moral duty to pay such taxes; and upon such duty the legal obligation may be imposed, provided taxpayer is not deprived of any constitutional protection through the provision of the act attempting to convert the moral duty to a legal obligation; that the usual effect of curative acts is to change or destroy rights existing before their enactment, but one cannot have a vested right to recover back taxes illegally assessed, if there existed a moral duty to pay same and the Legislature without violating any constitutional inhibition or restriction, has converted such moral duty into a legal obligation; such case being distinguished from one where a tax levy under a law is void because it failed to provide for such an assessment as gave taxpayer a chance to be heard upon question of rightfulness of valuation for taxation, or because the provision of law concerning assessment for taxation, are disregarded, so that taxpayer is given no chance, etc.; in which latter case a curative act does not validate such tax unless it provides an opportunity for taxpayer to be thereafter heard, etc.; but such ruling requiring giving of an opportunity for property owners' hearing, is inapplicable to any step in a tax proceeding of which taxpayer has no constitutional right to such notice and hearing. So held under statutes fixing rate of tax levy for school purposes by school boards and which is certified to by county auditor, who spreads levy on tax records, using such assessment as a basis.

6.   Same—Illegal Tax Rate Levy, Curative Act Tantamount to Original Legislative Tax Levy.

The fact that the rate of tax levy fixed by the officers of the illegal consolidated school district, was without legal authority, does not render a curative act ineffectual, since the Legislature might itself have fixed the rate of levy in the first place, its power in this respect being plenary in absence of constitutional inhibition; therefore, since it might by the curative act have fixed a rate applicable to all districts coming under the curative provisions of Ch. 47, Laws Special Session 1920, and applicable for all the time up to taking effect of the curative provision, it did in effect fix such rates when it ratified what the various unauthorized persons had purported to do.

Appeal from Circuit Court of Hamlin County. Hon. JOSEPH H. BOTTUM, Judge.

Action by John Alatalo, against Esther M. Shaver, as Superintendent of Schools in and for Hamlin County, South Dakota, C. P. Leonard and others, claiming to be and acting as the Board of Education and Directors of Hayti Independent Consolidated

School District No. 2 of Hamlin County, South Dakota, said Hayti Independent Consolidated School District No. 2 and H. L. Stearns, as County Treasurer of Hamlin County, South Dakota, and E. J. Sherin, as County Treasurer of Hamlin County, South Dakota, to set aside certain consolidated school district tax levies, to restrain further tax levies and collections thereunder, and for other relief. From two orders sustaining separate demurrers of the defendants to plaintiff's second supplementary complaint, plaintiff prosecutes two separate appeals.

Action by Isaac S. Isaacson, against the same defendants, seeking similar relief. From two orders sustaining separate demurrers of the defendants to plaintiff's second supplementary complaint, plaintiff prosecutes two separate appeals; defendants C. P. Leonard, and others being respondents. Orders in each case affirmed.

See, for decisions on former appeal, 42 S. D. 562, 176 N. W. 653; 43 S. D. 142, 178 N. W. 139; 45 S. D. 149, 186 N. W. 867.

*Eugene P. Campbell,* and *Loucks, Hasche & Foley,* Attorneys for Appellants, John Alatalo and Isaac Isaacson.

*H. A. Linstrom,* and *F. J. Benthin,* Attorneys for Respondents, Esther M. Shaver and others.

*M. J. Russell,* and *McFarland & Kremer,* Attorneys for Respondents, C. P. Leonard and others.

(4) To point four of the opinion, Appellants cited: Duncan v. Corson County (S. D.) 162 N. W. 395; McSurely v. McCrew (Iowa), 118 N. W. 415; McManus v. Hornaday (Iowa) 2 Am. & Eng. Cas. 237; Skinner v. Holt, 9 S. D. 434; School Dist. No. 56 v. St. Joseph Fire & Marine Ins. Co. (U. S.) 26 L. Ed. 601; Re Senate Bill No. 9 (Colo.), 56 Pac. 173.

Respondents Leonard and others cited: Viland v. Veblen (S. D.) 158 N. W. 906.

(5) To point five, Appellants cited: State Finance Company v. Meyers (N. D.) 112 N. W. 76.

Respondents Esther M. Shaver, H. L. Stearns and E. J. Sherin, cited: Chicago, Etc. R. R. Co. v. Austin, 1917D. L. R. A. 666; People ex rel. Fitzgerald v. Stitt, (Ill.) 117 N. E. 785; People ex rel. Vautier v. Madison, (Ill.) 117 N. E. 493.

Respondents Leonard and others, cited: Ensign v. Barse, 107 N. Y. 338; Cooley Con. Lim. 201.

WHITING, J. These causes were before us upon former appeals. Our opinions will be found reported, under the title of Isaacson v. Parker, in 40 S. D. 102, 166 N. W. 309, in 42 S. D. 562, 176 N. W. 653, and in 43 S. D. 142, 178 N. W. 139. Reference is made to such opinions for an understanding of the facts pleaded, the various issues that have been raised, and the holdings of this court. It will be found that this court, by reversing orders sustaining demurrers to the complaints, has held the attempted creation of the consolidated school district void, upon the ground that the statute under which it was attempted to be organized did not authorize the inclusion of an independent district in a consolidated district. When these causes were remitted to the trial court after the last of the above opinions, plaintiffs were granted permission to amend their complaints. The amendments were in the nature of supplementary pleadings, alleging the payment of, and seeking to recover, further taxes that had been paid under protest since the dates of the original complaints. Defendants again demurred to the complaints, and the trial court again sustained the demurrers. It is from the orders sustaining such demurrers that these appeals were taken.

[1] The former opinions of this court having announced the law of this case, the orders appealed from must, of necessity, be reversed, unless, by the passage of certain curative acts, the abortive attempt to incorporate the school district has been validated. Since the former appeals, but prior to the rulings of the trial court from which the present appeals were taken, the Legislature passed two curative acts—chapters 2 and 47, Laws Special Session 1920. The first is a special act purporting to validate the organization of this particular consolidated school district. The other specifically authorizes the organization of consolidated school districts through the union of an independent school district and one or more other school districts; purports to validate all acts and proceedings relating and pertaining to the organization of consolidated school districts organized or attempted to be organized under the law under which it had been attempted to organize this school district; purports to so validate such organizations, notwithstanding irregularities, omissions, and defects in the pro-

ceedings taken, and notwithstanding any want or lack of power to authorize same under the former statute; purports to validate such organizations as of the dates of such abortive attempts; declares such organizations so validated to have existed as consolidated school districts since their attempted organizations; and validates all the acts of the officers of said organizations, including all proceedings for taxation in support of such organization.

It seems conceded that the ultimate questions before us are: (1) Has the abortive effort to incorporate the consolidated district been entirely validated by the curative acts? (2) Even if the district in question is now a valid corporation, have the taxes levied prior to the curative acts been validated by such acts? In arriving at answers to these questions, we find it necessary to consider only chapter 47, supra, and express no opinion as to the effect of chapter 2, supra.

[2] Appellants contend that the Legislature was without power to pass any act to cure proceedings already adjudged jurisdictionally defective. This same contention was urged upon a second appeal in the case of Hodges v. Snyder, 43 S. D. 166, 178 N. W. 575. Our opinion on the second appeal will be filed at the same time this decision is filed, and will be found reported in 45 S. D. 149, 186 N. W. 867. That case also involved the validity of the attempted organization of a consolidated district under the same law under which the district now under consideration was organized. In that case, prior to the enactment of chapter 47, supra, this court, as in the present case, had held the attempted organization of the school district invalid, and a final judgment to that effect had been rendered by the trial court in compliance with such decision of this court. That case, therefore, upon the second appeal presented a unique situation, and its consideration required and led to a most careful distinction as to the purpose and effect of different curative acts, in order to determine what acts could become effective regardless of prior judicial action, and what ones could not. We found that it was the nature and purpose of an act, rather than the fact of pending actions or prior judgment, that determined the validity of curative acts, except, of course, that a curative act, which might be effective prior to final judgment, could never be effective to destroy a vested right created by a final judgment. However, in the pres-

ent case, there has never been a final judgment. Cooke v. Mc-
Quaters, 19 S. D. 361, 103 N. W. 385. The law as to the effect
of curative acts of the nature of the one now before us—being
the same one before us in the Hodges case—is so conclusively
settled by a line of decisions to which there is no exception that
we felt no hesitancy in declaring in the Hodges case:

"No one could or would for a moment claim that this act
would not have applied to and have affected the status of this
particular territory, if it had gone into effect but a few days
earlier—any time before such status had been judicially declared
by the final judgment of the circuit court."

We have examined every one of the large number of cases
cited in support of appellants' contentions. Such examination dis-
closes that each and every case which holds a curative act inef-
fective is like the cases cited by the respondents in the Hodges
case and reviewed by this court in its opinion therein. While
they fully support the propositions announced in Cooley's Const.
Lim. 113, and 6 R. C. L. 162, and which we quote in the Hodges
case, we can only say of them as we said of the cases cited by
respondents in that case:

"It seems too clear for dispute that these decisions have not
the slightest bearing upon the question before us."

We are satisfied that appellants, when they read those decis-
ions in the light of what we announce in the Hodges case, will
recognize the clear line of distinction between such cases and the
cases at bar. In addition to the authorities cited by us in the
Hodges case, we would cite United States v. Heinszen, 206 U. S.
370, 27 Sup. Ct. 742, 51 L. ed. 1098, 11 Ann. Cas. 688; Ferry
v. Campbell, 110 Iowa, 290, 81 N. W. 604, 50 L. R. A. 92; Mid-
dleton v. City of St. Augustine, 42 Fla. 287, 29 South. 421, 89
Am. St. Rep. 227; People v. Stitt, 280 Ill. 553, 117 N. E. 784;
Hepburn v. Curts, 7 Watts (Pa.) 300, 32 Am. Dec. 760; Brand
v. Multnomah Co., 320 Or. 79, 60 Pac. 390, 62 Pac. 209, 50 L.
R. A. 389, 84 Am. St. Rep. 772-784; Schenley v. Commonwealth,
36 Pa. 29, 78 Am. Dec. 359; and McSurely v. McGrey, 140 Iowa,
163, 118 N. W. 415—all of which are applicable to the exact facts
presented by the cases now before us. We would call particular
attention to the McSurely case, as the court therein passed upon
a curative statute covering two subject matters—one invalid for

reasons made perfectly. clear in that and the vast number of cases passing upon similar provisions; the other, similar to the act now before us, which all authorities hold valid, even after final judgment holding original act void. · In that case the court incidentally· discusses the plenary powers of the Legislature over counties, powers similar to its powers over school districts, certain fundamental rules governing the construction of curative acts, and other questions applicable to this case. The following, from the opinion in that case, applies fully to the case before us:

"The * * * section of the act now before us is purely legislative in character. It is neither executive nor judicial, and the Legislature had plenary power in its field, subject only to· constitutional limitations or prohibitions."

[3] However, appellants go further and contend that, even though there had been no action in court determining the invalidity of the act under which the attempt to organize this consolidated district was made, we must hold the curative act void because the proceedings taken to organize the district were absolutely void, and curative acts can cure only voidable proceedings. If this contention is sound, then the numerous consolidated districts (comprising former independent and common school districts), which were organized in the belief that the law then in force—the one sought to be cured by chapter 47, supra—authorized same, have no legal existence, even though no action may ever have been brought to test their validity. We deem the following proposition settled beyond all dispute:

"Where there is no constitutional prohibition, the Legislature may validate by a curative act any proceeding which it might have authorized in advance." People v. Madison, 280 Ill. 96, 117 N. E. 493, is a case peculiarly analogous to the one now before us.

In that case there had been an attempt to organize a school corporation under a certain act. The state's attorney sought leave to bring quo warranto proceedings to test the validity of the attempted organization. Leave was denied, and appeal taken from the order of denial. Pending the appeal, a curative act was passed attempting to validate the proceedings taken under the act above referred to. The appellate court held the original act void, but held that the curative act validated the attempted organiza-

tion. It announced the proposition above and cited several former decisions of the same court in support thereof. This court, in Vilan̄d v. Board of Education, 37 S. D. 412, 158 N. W. 906, and Id., 38 S. W. 440, 161 N. W. 810, held that:

"The power * * * to pass curative statutes is without any limit, except such as is imposed by constitutional restrictions or limtations."

This is but another way of announcing the proposition quoted above.

[4] Appellants contend that the act under consideration is unconstitutional, in that it violates certain subdivisions of section 23, art. 3, of our Constitution, prohibiting the enactment of special laws in certain cases. Discussion of whether the law before us pertains or relates to any of the cases specified in the various subdivisions of said section is unnecessary, as the law is not "special." It applies to each and every attempted organization of a consolidated district that may have failed for any of the reasons stated in such curative act. In State ex rel. v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L. R. A. (N. S.) 327, it is said:

"It is settled * * * that curative statutes, * * * which apply to all places, things, or subjects which are affected by the conditions which are to be remedied, are not special acts within the meaning of the constitutional prohibitions."

This decision was approved in Cole v. Dorr, 80 Kan. 251, 101 Pac. 1016, 22 L. R. A. (N. S.) 534, and it meets our full approval.

[5, 6] Appellants' final contention is in effect that, granting that the curative act validated the organization of the consolidated school district, it could not validate taxes that were levied for the support of the district before its organization was validated. In support of this contention, they cite People v. Van Nuys Lighting Dist., 173 Cal. 792, 162 Pac. 97, Ann. Cas. 1918D, 255. The facts in that case are peculiarly analogous to those in the present case. There was a statute authorizing the formation of lighting districts by unincorporated towns and villages. There was an attempt to organize a lighting district out of territory including two unincorporated towns and a large tract of rural territory surrounding and lying between such towns. Quo warranto was brought to determine the validity of such organization; relator's interest in

such action being through the fact that he was the owner of rural lands that had been taxed by such district. Upon appeal, the appellate court held that it was unnecessary to determine whether the corporation was wholly void, stating:

"It is enough that it was void in so far as the land of relator is concerned."

Attention was called to a curative act that had been enacted pending the appeal, and which, like the act before us, purported to cure all attempts to incorporate under the prior act and all corporate acts performed under such prior act. The court expressly declined to pass upon the question whether such act validated the corporation; but it did hold that such act could not validate the taxes levied prior to its enactment, stating that:

"Defects and omissions which go to the jurisdiction of the board to act at all, and which make their action absolutely void, cannot be cured in this manner."

If the holding above quoted is correct, appellants are entitled to recover all taxes levied prior to the going into effect of the curative acts. The importance, the far-reaching effect, of the question thus presented, can barely be over-estimated. The facts of this case present a good illustration of the evil results that would flow through our approval of the above holding. It is apparent, through the very fact of the levy from year to year of the taxes sought to be recovered, that the territory in question has been functioning as a consolidated school district. We must assume there were teachers hired and school privileges provided for the children. Steps may have been taken to build a schoolhouse; one may in fact have been built. Bonds may have been voted and issued, and the money derived from their sale used for the benefit of such territory. The above may be true in each and every territory throughout this state which like the territory before us—because of what this court has held to be a misinterpretation of the statutes of this state, relating to the organization of consolidated districts, in force prior to the curative act—made an abortive attempt to create such a district out of an independent district and one or more common school districts. It is a matter of common knowledge that there were several such attempts at organizations, since validated by such curative act. Whatever was done in any of these territories, that a lawful district might

have done, certainly cast upon one holding property taxable therein the moral duty to pay for same—the duty to meet his or her full share of all obligations incurred. This is a duty fully recognized in many decisions of the courts; and, upon such duty, the legal obligation may be imposed provided the taxpayer is not deprived of any constitutional protection through the provisions of the act that attempts to convert the moral duty to a legal obligation.

We may well inquire: What constitutional restrictions or limitations are there that are violated by the attempted validation of the tax proceedings in question? Remember we have not before us such a question as the validity of a tax sale made on a tax prior to the validation of such tax. It might be urged that appellants had, prior to the passage of this act, a right to recover these void taxes, and that it is beyond the legislative power to divest one of such rights. The usual effect of curative acts is to change or destroy rights that existed before their enactment. Appellants had, under the law as it was when the taxes were paid, the right to what? Nothing but the right to recover the money they had paid under protest unless, by proper legislation, the law was so changed that it would become their legal duty to pay it if they had not already done so. One cannot have a vested right to recover taxes, a right that cannot be taken from him, if there existed a moral duty to pay same, and the Legislature, without violating any constitutional inhibition or restriction, has converted such moral duty into a legal obligation. Cases are numerous where public improvements have been made without authority, assessment made, and taxes been levied to meet their cost. These taxes were invalid, and, without curative acts, the taxes, if paid, could have been recovered. However, the cases are almost without number where courts have held such curative legislation valid and denied the right to recover taxes paid.

Of course, such acts are not sustained, where their effect would be to take property without due process. Thus, where a tax levied under a law is void, because such law does not provide for such an assessment of the taxpayer's property as gives him a chance to be heard upon the question of the rightfulness of the valuation placed thereon for taxation, or because the provisions of the law, as to assessing property for taxation purposes, are

disregarded, so that the taxpayer is given no chance to be heard as to the fairness of the valuation of his property, no curative act can validate such tax, unless it provide an opportunity to the taxpayer to be thereafter heard upon the fairness of such valuation. But this rule, requiring the giving of an opportunity for property owner to be heard on question of valuation placed upon his property, can have no application to any step in the tax proceeding of which the taxpayer has no constitutional right to notice, and upon which he is not entitled to a hearing. Under our statutes, the rate of tax levy each year, for school purposes is fixed by the school board and certified to the county auditor, who spreads the levy upon the tax records, using the assessed valuation of each taxpayer's property as the basis for the tax levied; but this assessment— fixing the valuation of property for all general tax purposes—is made by an assessor under laws entirely separate and distinct from our school laws, and is made as the basis of all general taxes. No question as to the validity of the assessments upon which the taxes now in question are based, is made. It follows that the only thing upon which appellants can rest their claim, is the fact that the *rate of levy* was fixed and certified by a body of men who, at the time of such action, were without legal authority to act.

So, in the last analysis, appellants' claim rests, not upon the fact that they have been denied a hearing to which they were entitled, but upon the fact that the fixing of the rates of levy cannot be validated by that body which had the power to validate the abortive attempt to create the district. Of what avail would be the power to validate the organization of a school district if, accompanying it, there was not also the power to validate acts done by the district while it was wrongfully functioning as such? Let us not forget that the Legislature might itself have fixed the rate of levy in the first place—its power in this respect is plenary —there is no constitutional inhibition against that. This is not something which, from its very nature, the Legislature must delegate to some person or body. Rates of levy, and even amounts of tax, are frequently fixed by statute. Inasmuch, therefore, as the Legislature might have fixed the rate of tax levy in the original act it might likewise, by the curative act, have fixed a rate applicable to all districts coming under the curative provisions of

the act, and applicable for all the time up to the going into effect of the curative provisions. Did it not in effect fix such rates when it ratified what the various unauthorized persons had purported to do? We think it did. It declared that what the districts, through their boards, had done, was ratified. This was certainly just as lawful as, and much more equitable than, it would have been to fix one rate applicable to all districts. The Legislature could fairly assume that the rates thus validated were fairly proportionate to the costs of the past activities of the several districts.

We are of the opinion that the principles announced in the following cases are applicable to the facts in this case, and that, when such principles are applied to this case, it cannot but be held that the moral duty that rested upon the taxpayers of the territory in question, to bear the burdens that had been incurred in the name of the consolidated district, had been converted, by a valid act of the law-making power of this state, into a legal obligation: United States v. Heinszen, 206 U. S. 370, 27 Sup. Ct. 742, 51 L. ed. 1098, 11 Ann. Cas. 688; Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682, affirmed in Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763; Williams v. Supervisors of Albany, 122 U. S. 154, 7 Sup. Ct. 1244, 30 L. ed. 1088; Matter v. Van Antwerp, 56 N. Y. 261; Nottage v. Portland, 35 Or. 539, 58 Pac. 883, 76 Am. St. Rep. 513; Richman v. Supervisors, 77 Iowa, 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; Middleton v. City of St. Augustine, 42 Fla. 287, 29 South. 421, 89 Am. St. Rep. 227; People v. Seymour, 16 Cal. 332, 76 Am. Dec. 521, and notes.

The orders appealed from are affirmed.