OTTER TAIL POWER COMPANY et al., Appellants

v.

CITY OF COLMAN, et al., Respondents

(121 N.W.2d 483)

(File No. 9993. Opinion filed May 9, 1963)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, **Harold Benedict,** Colman, **Field, Arvesen, Donoho & Lundeen,** Fergus Falls, Minn., for Plaintiffs and Appellants.

**Carl Miller,** Flandreau, **Claude Hamilton, Blaine Simons,** Sioux Falls, for Defendants and Respondents.

ROBERTS, J. Otter Tail Power Company, a corporation serving the City of Colman and its inhabitants with electric service, and Eugene Fritz, a resident taxpayer applied for an injunction to restrain the City of Colman and its council from proceeding with the construction and financing of a municipal electric distribution system.

It appears from the record that on November 21, 1960, an ordinance designated as No. 48 was adopted. Section 1 authorized the construction and operation of a municipal electric distribution system to provide light, heat and power for municipal, industrial and domestic purposes. Section 2 authorized and directed

the council for the purpose of providing funds "for the Project and pursuant to Chapter 45.24, South Dakota Code as amended" to sell and issue "negotiable coupon Electric Revenue Bonds in the aggregate principal amount of not to exceed $95,000." The city council also adopted a resolution calling for an election to be held on December 13, 1960. It set out the proposition to be submitted. The ordinance in question was published in three successive issues of the Colman Argus preceding the election. This was followed by publication of a notice that the ordinance would be submitted to the electors of the city. The notice stated that "the foregoing Ordinance No. 48 will be submitted to the electors of the City of Colman, South Dakota, at the special election which has peen called and will be held on Tuesday, the 13th day of December, 1960, from 8:00 o'clock a. m. to 7:00 o'clock p. m." In the election, 229 votes were cast "for the approval of said ordinance", and 53 against it.

The provisions of SDC 45.24 and amendments thereto authorize a municipal corporation to acquire and operate an electric light, heat and power system and for purpose of defraying cost of constructing such a utility to issue negotiable bonds without pledging or using the credit of the municipality. The portion of that statute (SDC 1960 Supp. 45.2402) here relevant provides that "no such money shall be borrowed and no such bonds shall be issued until authorized by an ordinance duly adopted specifying the proposed undertaking * * * nor until such ordinance has been submitted to the voters of such municipality at a regular or special election and sixty per cent of the electors voting thereon have voted in favor of such ordinance. Such ordinance shall be submitted to the voters in the same manner as a referred ordinance, except that no referendum petition need be filed." The legislature has enacted statutes for carrying into effect the referendum power reserved by the Constitution (§ 1, Art. III) in the electors of a municipality. SDC 1960 Supp. 45.1010 et seq. The adoption in a statute of the provisions of another statute either by specific or general reference is a common practice. Mettet v. City of Yankton, 71 S.D. 435, 25 N.W.2d 460; annotation, 168 A.L.R. 627. The referendum on the question of issuing bonds to finance construction of a municipal light plant or system is not within the purview of the referendum provisions

of the Constitution notwithstanding the adoption by reference of the procedure enacted for the purpose of carrying out such constitutional provisions.

The specific contentions made herein are that Ordinance No. 48 was not adopted by the council since it did not receive a concurrence of a majority of all the aldermen; that the special election at which the ordinance in question was submitted to the electors was void; and that the validating act upon which defendants rely was not intended to do away with jurisdictional or constitutional requirements.

The City of Colman is a municipality of the second class divided into three wards and two aldermen are elected from each ward. Plaintiffs argue that the removal of an alderman from the ward from which he was elected effected a vacancy and his vote in favor of the ordinance in question being a nullity, the remaining three aldermen voting affirmatively did not constitute a majority of all the aldermen as required by the provisions of SDC 45.0707.

Plaintiffs also contend that the city auditor failed to give notice of a special election to vote on the question of the approval of the ordinance. The auditor as we have stated caused Ordinance No. 48 to be published, followed by publication of a notice that it would be submitted to the electors at a time specified. SDC 1960 Supp. 45.1011 requires that a referred ordinance be submitted to the electors of a municipality at a special election within 30 days after filing of a petition, with an exception not here pertinent. SDC 45.1304 provides for the giving of notice of a special election and specifically requires that the notice "shall state any question or questions to be voted upon." It is asserted that notice of special election and of the submission of an ordinance to the voters must be given in addition to the publication thereof and of notice "that on the day of election therein stated such ordinance * * * will be submitted to the electors" as required by the provisions of SDC 45.1014.

Plaintiffs, in support of their contention that the first publication of a referred ordinance must be at least twenty days before the date of election, rely on the provisions of SDC 1960 Supp.

45.1010-11 providing that an ordinance "shall take effect on the twentieth day after its publication unless suspended by operation of a referendum" and that "[t]he required number of qualified electors residing in any municipality may file within twenty days after the publication of any ordinance   *   *   *   a petition with the auditor or clerk, requiring the submission." The affidavit of publication filed with the city auditor states that Ordinance No. 48 was first published on November 24. Counting that day as the first day of publication there were only nineteen days before the election on December 13. Counsel seemingly take the position that statutes implementing the referendum provisions of the Constitution are jurisdictional and essential elements of the law giving effect thereto and that no exception can be made where an ordinance is submitted by action of the governing body of a municipality.

If a validating act which became effective March 8, 1961, has supplied the necessary legislative authorization for the issuance of the bonds, we need not decide the procedural questions raised by plaintiffs.

At the regular session of the legislature in 1961 there was enacted a statute entitled "An Act legalizing   and   validating bonds of political subdivisions and proceedings heretofore taken and authorizing the issuance of bonds pursuant to said proceedings." As used in this statute (Ch. 465, Laws 1961) the words "political subdivision" include cities and the word "bonds" means "any obligation payable at a specified future date, including but without limiting the generality hereof revenue bonds under SDC 45.24 as amended." The pertinent provisions of the statute read:

"In all such cases the bonds so issued and all proceedings heretofore taken for the issuance of such bonds and for the levy and appropriation of taxes, assessments, or revenues for the payment thereof and all covenants heretofore made for the security of such bonds are hereby declared to be valid and legal, notwithstanding any defect or irregularity, other than constitutional defects, in any of said bonds and notwithstanding any defect irregularity or unauthorized actions in such proceedings, including, but without limitation of the generality

hereof, any defect or irregularity in any election or petition required by law, or in any of the obligations heretofore issued which are funded or refunded, or to be funded or refunded, by bonds heretofore issued or authorized to be issued; and all such bonds hereafter issued, when and as they are issued pursuant to said proceedings heretofore taken, shall be legal, valid and binding obligations of the political subdivision issuing the same, notwithstanding any defects, irregularities, omissions or unauthorized actions, other than actions prohibited by the constitution or omissions of actions required by the constitution, in the proceedings taken for the issuance of such bonds."

█ The legislature may ratify and validate acts which it could have authorized in the first instance. Viland v. Board of Education, 37 S.D. 412, 158 N.W. 906; Alatalo v. Shaver, 45 S.D. 163, 186 N.W. 872; Davey v. McShane, 47 S.D. 265, 197 N.W. 680; Grand Lodge, etc., v. Fischer, 70 S.D. 562, 21 N.W.2d 213, 161 A.L.R. 1466; see also First National Bank of Brunswick, Maine v. Yankton County, 101 U.S. 129, 25 L.Ed. 1046; Hodges v. Snyder, 45 S.D. 149, 186 N.W. 867, 25 A.L.R. 1128. The rule is thus stated in Cooley's Constitutional Limitations, 8th Ed., Vol. 2, p. 775: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." The legislature in providing in the 1961 Act that all proceedings taken for the issuance of bonds are valid and legal notwithstanding any defect or irregularity "other than constitutional defects" intended to follow the recognized limitations upon its powers.

█ The question of the approval of the ordinance and the issuance of the bonds as above stated was submitted to the electors of the City of Colman at an election held for the purpose and

more than sixty per cent of the electors gave their assent. We are satisfied that the election was validated by the curative act. The Constitution of this state does not provide the manner in which the electors of a municipality shall manifest their consent to the issuance of revenue bonds. The claimed irregularities or omissions to comply with statutory requirements in the proceedings leading up to the election were not "constitutional defects" in the sense that the legislature could not because of constitutional restrictions have authorized originally the procedure followed by the city council and auditor in calling the election. The court in Anderson v. Santa Anna Twp., 116 U.S. 356, 6 S.Ct. 413, 29 L.Ed. 633, deciding somewhat the same question, said: "As the constitution of the state did not provide any particular mode in which the corporate authorities of a township should manifest their willingness or desire to incur a municipal debt for railroad purposes, we perceive no reason why the action of the majority of legal voters, at an election held in advance of legislative action, might not be recognized by the legislature, and constitute the basis of its subsequent assent to the creation of such indebtedness, and its ratification of what had been done." The legislature gave effect to the will of the electors.

The judgment appealed from is accordingly affirmed.

All the Judges concur.