PAYNE, et al., Paintiffs, v. JONES, State Auditor, Defendant.

(199 N. W. 472.)

(File No. 5450. Opinion filed June 26, 1924.)

1. **Constitutional Law—Presumptions—Presumption Is in Favor of Constitutionality of Statute.**

     The presumption is in favor of constitutionality of statute, and it will be upheld if possible to do so without desiregarding the plain command or necessary implication of the fundamental law.

2. **Constitutional Law—Statutory Construction—Circumstances Presumed in Favor of Validity of Statute.**

     If a statute would be valid only if certain circumstances existed it will be presumed that such circumstances existed.

3. **Constitutional Law—Statutory Construction — Appropriations — Appropriation of Public Money Upheld in Case of Reasonable Doubt.**

     If it does not clearly appear from an act and appropriation of money by the Legislature that is for a purely private purpose, and if any reasonable doubt exists as to whether it is for a public or private purpose, the court must uphold the act.

4. **States—Live Stock Sanitary Board—Contagious Diseases—Constitutional Law—Appropriation of Money to Pay for Animals Killed by Dipping Not Unconstitutional; "Public Agency"; "Public Purpose."**

> Laws 1923, c. 77, Sec. 1, appropriating money to pay for
> stock killed by dipping in pursuance of an order of the live
> stock sanitary board, whose superintendent, under Rev. Code
> 1919, Sec. 8061, was empowered to deal with contagious dis-
> eases, is not unconstitutional as not being an appropriation of
> pubilc money for a public purpose; the board being a "public
> agency" of the state, and the prevention of disease among live
> stock being a "public purpose."

Original proceeding in mandamus by Steve Payne and others against Edward A. Jones, as State Auditor. Motion to quash alternative writ denied and defendant permitted to answer.

*Martens & Goldsmith,* of Pierre, for Plaintiffs.

*Buell F. Jones,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General for Defendant.

Plaintiffs cited: 6 R. C. L. 102; Sandel v. State, (S. C.) 104 S. E. 567, 13 A. L. R. 1268; Sipple v. State, 99 N. Y. 284, 1 N. E. 392; 25 R. C. L. 399; Monroe v. State, 119 N. E. 444; Smith v. State, 227 N. Y. 405, 125 N. E. 841; Woodall v. Darst, (W. Va.) 77 S. E. 264 44 L. R. A. (N. S.) 83; Stephenson v. Colgan, (Cal.) 14 L. R. A. 459, 461.

Defendant cited. Mackey v. Reeves, 42 S. D. 340; 26 R. C. L. 46; 37 Cyc 719; Alameda County v. Chamber as State Controller, (Cal.) 170 Pac. 650; People of State of New York v. Winchester National Bank of Peekskill, (N. Y.) 231 N. Y. 465, 132 N. E. 241, 15 A. L. R. 1344; 25 R. C. L. 407; People v. Salem, 20 Mich. 420; Stavig v. Van Camp, 193 N. W. 731; Barker v. State Fish Commission, 88 Wash. 73, 152 Pac. 537, Ann. Cas. 1917D, 810.

DILLON, J. This is an original proceeding in mandamus to compel defendant, Jones, as state auditor, to issue to plaintiffs a warrant upon the state treasury for the payment of $700 pursuant to the act of the Legislature (chapter 77, Laws of 1923) which reads as follows:

"Section 1. There is hereby appropriated out of any money in the state treasury, not otherwise appropriated, the sum of seven hundred dollars ($700.00) to reimburse the partnership firm of Wadleigh & Payne for cattle lost following dipping in August, 1921, in compliance with an order of the live stock sanitary board."

The affidavit recites the act of the Legislature, the approval of the same, the presentment to the state auditor of a certified voucher for said sum, the refusal of the state auditor to issue his warrant on the grounds that the act contravened the state Constitution. It appears that the plaintiffs' ranch is located in Sully county, and is within the area covered by an order of the state live stock sanitary board requiring all those having cattle within that district to dip them twice prior to July 15, 1921. The plaintiffs, although their cattle were free from scabies or other infectious or contagious disease, in order to comply with this order of the live stock sanitary board, drove their herd of cattle to the dipping vat on the morning of August 18,1921. The dip in this vat was prepared, mixed, and tested by a deputy state veterinarian, who, after having tested the dip, pronounced it to be of the proper solution, and directed that the plaintiffs drive their cattle through the vat.

The affidavit further recites:

"The deputy state veterinarian in so preparing the dip was usng a nicotine solution and a different preparation than had been previously used at that vat. Owing to the careless or negligent manner in which the dip was tested, mixed, or prepared by the deputy state veterinarian, it was of such a poisonous character that out of the 28 head of the plaintiffs' cattle which were dipped 14 died as the proximate result of the nicotine poisoning. Some were dead before the entire bunch of more than 28 head had been run through the vat. As soon as the first one died they ceased running the cattle through that particular dip."

Defendant justifies his refusal to issue the warrant on the ground:

That the Constitution (art. 11, §2) provides, among other things, as follows:

"Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only."

That the passing of this egislative act attempts to appropriate public funds for a private purpose, and therefore it is unauthorized.

The board of county commissioners is authorized to provide in accordance with plans and specifications approved by the state live stock sanitary board dipping vats, and all live stock owners

shall be required to use such dipping vats under the orders of the state live stock sanitary board. The county in which the dipping vats are located is required to pay the expense of each dipping.

The live stock sanitary board is empowered to order the destruction of animals afflicted with glanders and tuberculosis, and it is granted full powers to enforce its rules and regulations.

Section 9061, Rev. Code, declares it to be the duty of the superintendent to ascertain by personal examination or through reports of authorized agents and representatives of the board all attainable information of contagious, infectious, epidemic, and communicable diseases among domestic animals, and to perform such other duties as may be prescribed by law and the rules and the regulations of the board.

This court in Mackey v. Reeves, 44 S. D. 153, 182 N. W. 700, in a former opinion, held that an appropriation of such money, to be constitutional, must be for some use or object which directly or indirectly in some degree or manner aids in the functioning of some governmental purposes. Horris v. Handlin, 38 S. D. 550, 162 N. W. 379.

[1] The presumption is in favor of the constitutionality of the statute. 6 R. C. L. 97. By reason of this presumption it is the general duty of the courts to uphold any statute enacted in the ordinary exercise of the legislative power if it is possible to do so without disregarding the plain command or necessary implication of the fundamental law. 6 R. C. L. 101.

[2] If an act of the Legislature would be valid only in the event that certain circumstances existed, it will be presumed that all such circumstances did exist. 6 R. C. L. 102.

A case very much in point is that of Sandel v. State, 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268. In that case two children of the plaintiff died as a result of the inoculation of alleged impure anti-typhoid vaccine sent out for use by the state board of health. The Legislature of South Caroline passed an act granting to the plaintff the right to bring an action against the state to determine whether or not the officers of the state board of health were negligent in the various details of the preparation and bottling of the vaccine. It was claimed that the act contravened the Constitution. The court, in passing upon this proposition, stated:

"The state, acting through the Legislature, had the power, which it always has and should exercise on proper occasion, to recognize claims against it, founded on justice and equity. It may even recognize some moral obligations. * * * The act does not create a liability which did not exist before its passage. The liability is one that is recognized by the common law. The only obstacle that lay in plaintiff's path to the enforcement of it was the state's immunity from suit, without its consent. The act, therefore, by giving consent, merely provides a remedy where none existed before."

[3] The Legislature is vested with a large discretion which cannot be controlled by the courts. If it does not clearly appear from the act and appropriation that it is for a purely private purpose, the court cannot so decide. If any reasonable doubt exists as to whether it is for a public or private purpose, the court must uphold the legislative act. 25 R. C. L. 399

In Sipple v. State, 99 N. Y. 284, 1 N. E. 892, it is said:

"The act was conceived in the plainest principles of justice, and was intended to afford a substantial and not a delusive remedy to parties who might be injured by the careless and negligent conduct of those who were intrusted by the state with the execution of its work."

In passing upon the case of whether or not the Legislature could make an appropriation to compensate a guard at a state hospital for injuries received at the hands of one of the inmates, the Supreme Court of New York, in the case of Munro v. State, 223 N. Y. 208, 119 N. E. 444, lays down the rule as follows:

· "That the state cannot give its money for private undertakings or in the exercise of gratitude or charity is firmly established. Constitution, art. 8, § 9. The Legislature, however, is not prevented from recognizing claims founded on equity and justice, though they are not such as could have been enforced in a court of the law if the state had not been immune from suit. Many are the instances where the state has allowed claims for work performed, or material furnished, or improvements made in conjunction with quasi public corporations, although there was no legal liability had the state been an individual instead of sovereign. * * * The basis for such allowance has been the moral obligation or the equity arising out of the facts."

In the case of Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 44 L. R. A. (N. S.) 83, the court, in passing upon an appropriation made to a militiaman who was injured while on duty going to a state encampment, and where the treasurer refused to issue his warrant for the appropriation so made, laid down the rule as follows:

"The Legislature has a right to appropriate the public funds in discharge of the state's duty, whether the duty be legal or only moral. And the discharge of such an obligation is always regarded as a legitimate exercise of governmental power. That a private person may receive the benefit of an appropriation made in discharge of a public moral duty does not constitute the act of appropriation a private one. * * * In making appropriations of public moneys, the Legislature is not confined within the strict limits of what, in cases between individuals, would be considered a legal obligation, 'but it may recognize moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law required to do so or not.' 1 Cooley on Taxation, 209."

[4] We are of the opinion that the live stock sanitary board is a public agency of the state; that the prevention of disease among live stock is a public purpose; that the appropriation was an acknowledgment of a moral liability on the part of the state for the damages caused by the acts of such board; that the Legislature in passing the appropriation believed that it would aid in the functioning of such board, and it cannot be said, beyond a reasonable doubt, that the Legislature erred in such belief. Therefore the clause of the Constitution which requires that taxes shall be levied and collected for public purposes only cannot be said to have been violated.

· The motion to quash the alternative writ is denied. Defendant will be given 30 days within which to answer.

Note.—Reported in 199 N. W. 472. See, Headnotes (1), (2) and (3), American Key-Numbered Digest, Constitutional law, Key-Nos. 48, 12 C. J. Secs. 220, 221, 222; (4) States, Key-No. 114, 36 Cyc. 894.