STATE, Appellant, v. URBAN, Respondent.

(245 N. W. 474.)

(File No. 7264. Opinion filed November 28, 1932.)

*M. Q. Sharpe,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, for the State.

*Max Royhl,* of Huron, for Respondent.

CAMPBELL, P. J. Defendant was proceeded against in the court below upon an amended complaint which charged: " * * * That the defendant Harvey J. Urban at the said County of Beadle, on the 20th day of October, A. D. 1929, with force of arms then and there did wilfully and onlawfully shoot and take into his possession one Chinese Ring-Necked Pheasant in the defense of his property at a time when said pheasant was in the corn field of said defendant eating and destroying corn belonging to said defendant, and said time when said Chinese Pheasant was so shot and taken into possession by defendant not being one of the times declared to be an open season for the shooting or possession of Chinese Ring-Necked Pheasants, against the peace and dignity of the State of South Dakota, and contrary to the form of the statute in such case made and provided * * *." To that amended complaint the defendant demurred upon the ground, inter alia, "That the amended complaint contains matter which, if true, would constitute

a legal justification or excuse for the offense charged or other bar to the prosecution." His demurrer was sustained, and the state has appealed. The question argued in the briefs is whether or not the allegation of the complaint, that the shooting of the pheasant was "in the defense of his property and at a time when said pheasant was in the corn field of said defendant eating and destroying corn belonging to said defendant," shows a legal justification or excuse for defendant's act.

Appellant argues that, under the laws of this state, there is no right of defense of property against protected game birds other than as may be specifically provided by statute or as permitted by section 1, c. 129, Laws 1927, reading as follows: "On complaint of any freeholder or tenant of the State of South Dakota that any game animals or game birds of the State are doing damage to his or her property, upon written permission from the Director of Game and Fish, first obtained, said freeholder or tenant shall be permitted, or any Deputy Director of Game and Fish may be instructed to kill or capture such animals or birds, under such regulations as the Director of Game and Fish may provide. Any animals or birds killed under the provisions of this section shall be the property of the State and shall be disposed of in such manner as the Department of Game and Fish shall direct."

Respondent argues that he has a constitutional right to defend and protect his property (section 1, art. 6, Constitution S. D.) of which no legislative act (whether it be a statute providing for a closed season on game birds or any other conceivable enactment or regulation) can lawfully deprive him.

Those are questions which may arise and may properly be for decision by this court if and when a case is here presented in which it is made to appear that the killing of a protected bird or animal was, upon all the existent facts, reasonably necessary to the defense of persons or property. There is no such showing in this case, and no such fact situation appears by any fair implication from the language of the complaint. This court has frequently had occasion to point out that it will not decide constitutional questions upon assumed or supposititious cases, nor until it clearly appears that the constitutional question is raised by one whose substantial interests are actually affected. See Rowe v. Stanley County (1928) 52 S. D. 516, 219 N. W. 122.

Respondent presses upon the attention of the court such cases as State v. Burk (1921) 114 Wash. 370, 195 P. 16, 21 A. L. R. 193, and State v. Ward (1915) 170 Iowa, 185, 152 N. W. 501, Ann. Cas. 1917B, 978. Even a casual examination of those cases is sufficient to demonstrate that they deal with a situation vastly different upon the facts from anything that can fairly be implied from the language of the complaint in the case now before us. In the Washington case defendant shot two elk at a time forbidden by the game laws of the state and had the carcasses in his possession until he surrendered the same to the county game warden. When brought to trial he offered testimony as defense and justification tending to show the following facts: "That he owned a tract of land, which was grown to corn, potatoes, meadow and other crops; that a band of eight elk had recently been in the habit of coming upon his premises and causing damage; that a short while before he shot any of the elk, he had on one night three times driven them from his premises; that on one occasion they had killed a valuable calf, and on another severely injured another calf; that the elk were in the habit of running through his cornfield and knocking down the corn and greatly damaging it; that about the time in question here, at 7 o'clock in the morning, he discovered this band of elk running through his cornfield and potato patch, knocking down and trampling upon his crops, and that while they were so doing he shot a male and female elk. He identified these two animals as being two of the herd of elk which had theretofore been on his place." The trial court held that such facts would constitute no justification for the killing and refused to permit the offered evidence to go to the jury. On appeal the Supreme Court held that the appellant was entitled to introduce such testimony for consideration by the jury upon the question of whether or not the shooting was justified as being reasonably necessary for the preservation of his property under all the circumstances. In the Iowa case the trial court in its judgment recited in part as follows: "It appears that this case was brought as a test case to determine whether this defendant has a right to kill deer that are injuring and destroying his corn. It appears from the evidence that in the neighborhood of defendant's farm there are from 150 to 200 deer which range up and down the country adjacent to defendant's premises, and that for years they have eaten

up and trampled down more or less of the defendant's standing grain, and his corn after it has been cut and shocked, even when piled up in his barn lots; that defendant has many times driven them away, but they have come back and have destroyed his crops to the amount of hundreds of dollars, and at last he shot one, not for the purposes of food or out of wantonness, but to have the question determined by the highest judicial tribunal of this state whether he is obliged to submit to the continuation of such damage. It appears from his own testimony that he has never asked the game warden of this state to kill or capture any of such deer, as provided in chapter 206 of the Laws of the Thirty-fifth General Assembly. It is the opinion of the court that the defendant had no right to kill the deer in question before he had asked protection from the game warden, as seems to be afforded by such statute. Therefore, and also for the purpose of having the matter determined, the defendant is found guilty." The appellate court said:

"We do not presume to pass upon the weight of the evidence tending to prove the fact of reasonable necessity. It is sufficient to say that the evidence would have sustained such a finding if made by the trial court. The case was tried below on the theory that such defense was not available. * * *

"We think, therefore, that the defendant was entitled to make an issue of fact on the question of justification as already indicated. The judgment of conviction must therefore be—Reversed."

It is to be noted in both of those cases that there was much more than a single act of depredation by a single animal. There was a very substantial and continuing destruction of property; and even then the courts did not hold that there was a complete and absolute defense as a matter of law, but only that the evidence was such as might justify the fact-finding tribunal (whether court or jury) in determining, if they saw fit so to do, that the killing was justifiable because it was reasonably necessary in the defense of property. Certainly it is not the theory of those cases that every killing is absolutely justifiable merely upon a showing that the bird or animal was at the moment engaged in destruction of property, and regardless of all other attendant and surrounding facts and circumstances. Their doctrine, most liberally construed, does not go beyond this; that some reasonable necessity for the

killing must appear to constitute justification, and that it is for the trier of the facts to say whether or not the killing in violation of the statute was reasonably necessary to defense of property in the particular case.

In the instant case, so far as the allegations of the complaint are concerned, it might be true that neither this particular pheasant nor any other had ever previously been on the property of respondent. It might further be true that the corn which was being eaten, while technically the property of the respondent, consisted merely of kernels or broken ears fallen to the ground, which as a practical matter, respondent could never recover or utilize. If those were the facts, surely neither the Iowa court, the Washington court, nor any other which has ever passed on the matter, would say that the respondent was entitled to go to the jury on the quesion of justification. Certainly even if it be assumed that a killing reasonably necessary to defense of property is justifiable, nevertheless it is not every trifling, casual, occasional, or technical destruction of property which would justify respondent in taking the matter into his own hands and violating the statutes of this state upon the theory that he was justified in so doing by a constitutional right of protection of property.

We incline to agree with the view of Mr. Justice Holmes as expressed in his dissenting opinion in Tyson & Bro.-United Theatre Ticket Offices v. Banton (1926) 273 U. S. 418, 47 S. Ct. 426, 433, 71 L. Ed. 718, that constitutional provisions cannot always be pressed to their grammatical extremes, and "that property rights may be taken for public purposes without pay if you do not take too much, that some play must be allowed to the joints if the machine is to work."

Facts fairly to be implied from the language of the complaint in this case do not in our judgment present any constitutional question, and we do not propose to frame such a question and decide it on a speculative basis.

What facts might be deemed sufficient to support a finding that the killing of a game bird was reasonably necessary in defense of property, and whether the fact that the killing was found to be reasonably necessary in the defense of property would constitute a justification or defense (either absolute or in the discretion of

the jury) as against a prosecution for violation of the game laws, are questions which we will not undertake to pass upon until some case is presented here where the solution of those questions is essential to a decision of the appeal.

For the determination of the instant case we need go no further than to say that there is no language in the complaint sufficient to show that the killing (although "*in* defense of property") was reasonably necessary for the defense of property, or sufficient to show as a matter of law any absolute defense to the law violation charged.

The order sustaining the demurrer must therefore be reversed.

All the Judges concur.