GREAT NORTHERN RAILWAY COMPANY, Appellant, v. WHITFIELD, County Treasurer, Respondent.

(272 N. W. 787)

(File No. 7890. Opinion filed April 16, 1937)

*Judge & Chapman*, of Sioux Falls, for Appellant.

*Walter Conway*, Atty. Gen., *James Brown* and *Herman Bode*, Asst. Attys. Gen., and *Louis N. Crill*, State's Atty., of Sioux Falls, for Respondent.

*H. Van Ruschen*, of Salem, amicus curiæ.

RUDOLPH, P. J. Following the decision of this court in the case of Simmons v. Ericson, 54 S. D. 429, 223 N. W. 342, the Legislature of 1929 by a joint resolution submitted to the people of this state a proposed constitutional amendment (see Laws 1929, c. 85), as follows:

"Section 2. That Section 15 of Article 8 of the Constitution of the State of South Dakota be amended to read as follows:

"Section 15. The Legislature shall make such provision by general taxation and by authorizing the school corporations to levy such additional taxes as with the income from the permanent school fund shall secure a thorough and efficient system of common schools throughout the state. The Legislature is empowered to classify properties within school districts for purposes of school taxation, and may constitute agricultural lands a separate class. Taxes shall be uniform on all property in the same class."

This proposed constitutional amendment carried by a substantial majority at the general election in 1930, and the Constitution was thus amended. The 1931 Session of the South Dakota Legislature, purporting to act in conformity with the authority granted by the constitutional amendment just referred to, enacted chapter 256 Laws 1931. This act is in all material respects the same as chapter 102, Laws 1923, which was invalidated by the decision in the Simmons v. Ericson Case. Said chapter 256, including the title thereof reads, as follows:

"An Act Entitled, An Act Classifying and Defining Agricultural Lands and Other Real Estate for the Purpose of School

Taxation and Fixing a Maximum Levy of Eight (8) Mills on Agricultural Lands to Which the Act Applies, and Requiring the County Auditor to Certify the Amount of Assessed Valuation of Agricultural Lands and Amending Section 7567 of the South Dakota Revised Code of 1919, as Amended by Chapter 50 of the Laws of the Special Session of 1920.

"Be it enacted by the Legislature of the State of South Dakota:

"Section 1. For the purposes of school taxation, real property within school districts is hereby classified into two separate classes, to-wit:

"First—Agricultural lands.

"Second—Other real estate.

"Section 2. Agricultural lands within school districts include all real estate not platted in the city or town lots or blocks, and not used or occupied for other than agricultural purposes.

"Section 3. The assessor in listing and assessing real property situated within any school district to which this act applies shall designate opposite each description the class to which it belongs as defined herein.

"Section 4. No agricultural lands, as herein defined, shall in any one year, be taxed to exceed eight (8) mills on the dollar for school purposes, exclusive of levies for interest and sinking funds provided, however, that an independent consolidated school district in which there is no incorporated town shall not be included in the provisions of this act.

"Section 5. It shall be the duty of the county auditor to transmit to the clerk of each school district to which the provisions of this act apply his certificate under the seal of his office, on or before the first Tuesday in September, which certificate shall show the number of acres of agricultural lands within such school district and the average assessed valuation per acre, including improvements thereon, figured on the basis of the assessment, as equalized by the State Tax Commission.

"Section 6. That Section 7567 of the Revised Code of 1919, as amended by Chapter 50 of the Session Laws of 1920, is hereby amended to read as follows:

"Section 7567. The board of education or school board, in school districts where this act applies, shall not later than the second Tuesday in September, or within ten days thereafter, levy a tax for the support of the schools of the school district, for the fiscal year next ensuing, not exceeding in any one year twenty-five mills on the dollar of the assessed valuation of all taxable property within the district, provided that in a school district where there are the two classes of real estate as herein defined, the levy for the support of the schools within the district shall not exceed in any one year eight (8) mills on the dollar of the assessed valuation of agricultural lands therein; provided, that if such levy is insufficient for the support of the schools within the district and the levy already made on property other than agricultural land is less than 25 mills, the school board shall levy an additional tax not exceeding, inclusive of what has already been levied, 25 mills on the dollar of the assessed values on all taxable property other than agricultural land within the district.

"The clerk of the school board shall certify the levy to the county auditor, who is authorized and required to place the same on the tax roll of the county, to be collected by the county treasurer as the taxes of the county, and paid over by him to the treasurer of the school district, of whom he shall take a receipt in duplicate, one of which he shall file in his office and the other he shall transmit to the clerk of the board of education. Such receipt shall show the proportionate amounts belonging to the several funds of the board of such school district, apportioned by the treasurer thereof according to the relative amounts levied by such board for the current year.

"Section 7. The provisions of this act shall not apply in school districts where the average assessed valuation in any year of agricultural lands, as herein defined, is Twenty-seven Dollars ($27.00) per acre or less.

"Section 8. If any section or part or parts of this act are declared to be unconstitutional the remaining sections or parts of this act shall remain in full force and effect.

"Section 9. All acts or parts of acts in conflict with the provisions of this act are hereby repealed.

"Approved February 16, 1931."

Plaintiff and appellant commenced this present action asserting the invalidity of the 1931 law and alleging that it owned and operated a line of railroad within certain independent school districts located in Minnehaha county of this state, each of which school districts contains within its borders an incorporated town and in each of which said school districts the average assessed valuation of agricultural lands exceeds $27 per acre. Plaintiff further alleges that the taxing authorities in the school districts mentioned in the complaint have levied and assessed the taxes in the various school districts under the terms of the act of 1931, herein above set out, limiting the levy of agricultural lands located in said school districts to the 8-mill levy provided in the act, and levying on other lands, plaintiff's land included, in excess of 8 mills. Plaintiff paid its taxes under protest and has brought this action to recover that portion of the tax which plaintiff alleges was illegal because of the invalidity of the 1931 act. See Chicago, R. I. & P. Ry. Co. v. Young, 60 S. D. 291, 244 N. W. 370. From an order sustaining a demurrer to the complaint plaintiff has appealed.

■ Plaintiff first contends that the act of 1931 is invalid because of a defective title. It is plaintiff's contention that under the terms of this act the levy limit on lands in common school districts is increased from the 15-mill limit provided in section 146, chapter 138, Laws of 1931, to 25 mills. We doubt the validity of this premise upon which the appellant rests this contention, but, even conceding that the premise is sound, we, nevertheless, are convinced that the contention is without merit. Appellant argues that the increase of this levy limit on lands located in common school districts is not reflected in the title to the act, and hence section 21 of article 3 of the State Constitution is violated. If the levy limit on lands in common school districts is raised by virtue of this 1931 act, it is accomplished through the amendment of section 7567, Rev. Code 1919, as amended by chapter 50 of the Special Session Laws of 1920. The amendment of this amended section of our Code is specifically referred to in the title of the 1931 act (chapter 256).

■ The complaint fails to disclose that appellant has any lands located in common school districts which are affected by the alleged levy limit increase in such districts or that a 15-mill levy has

been exceeded in any common school district, and hence appellant is not in a position to raise this constitutional question. There is no showing that any substantial interest of appellant is or will be affected, even conceding that the levy limit on lands in common school districts is increased by the provision of the act. Rowe v. Stanley County, 52 S. D. 516, 219 N. W. 122; State v. Urban, 60 S. D. 614, 245 N. W. 474.

█ Appellant next contends that the Legislature has not properly exercised the authority granted by the amendment of section 15 of article 8 of the State Constitution. The gist of this contention is to be found in a paragraph in appellant's brief as follows:

"It may be conceded that the statement in the amendment that the Legislature 'may' classify properties, was, before the Legislature undertook to act under its provisions, directory rather than mandatory. However, once the Legislature has undertaken to exercise the power granted, its action must be in conformity with the grant. We contend that if, under the constitutional authority here involved, any property (properties) is classified, then all property (properties) must be classified."

We fail to find any merit in this argument of appellant. The constitutional amendment specifically provides that the Legislature may "constitute agricultural lands a separate class," and it appears that the Legislature has done this very thing. Certainly, there is no requirement in this constitutional provision to make any other classification. Appellant cites a Minnesota case, State ex rel. St. Paul City Ry. Co. v. Armson, 128 Minn. 384, 150 N. W. 1087, wherein it appears that the Legislature of Minnesota had created for the purposes of taxation three classes of property and then a fourth class embracing all other property and suggests that our Legislature ought to make some similar classification. It might be that the Legislature would be justified in classifying the property in school districts for the purpose of school taxation in four classes or twenty-four classes, but the Legislature has seen fit, so far as this act is concerned, to classify by making agricultural lands one class and all other properties another class. We believe this to be clearly within the authority granted in the Constitution. The constitutional amendment does not mean that the Legislature must, if

it acts at all, make every conceivable classification within its power. Any such construction of the constitutional amendment, in our opinion, would be unreasonable.

Appellant further contends that the 1931 act wherein it makes a separate classification of agricultural lands violates the uniformity clause of our State Constitution (article 11, § 2), and the Fourteenth Amendment of the Federal Constitution. We think it clear that since the passage of the constitutional amendment in 1930, the classification made by the Legislature by the act of 1931 was within its power under the State Constitution. The inquiry then concerns itself with the question of whether the 1931 act constitutes, under the Fourteenth Amendment, an allowable classification for the purposes of school taxation. Certain general principles governing the question here under consideration have been evolved through the many decisions of the United States Supreme Court where similar questions have been presented. These general principles are summarized in the comparatively recent opinion of the United States Supreme Court in Colgate v. Harvey, 296 U. S. 404, 56 S. Ct. 252, 255, 80 L. Ed. 299, 102 A. L. R. 54, as follows:

"This court has frequently said that absolute equality in taxation cannot be obtained, and is not required under the Fourteenth Amendment. This, of course, is not to say that, because some degree of inequality from the nature of things must be permitted, gross inequality must also be allowed. The boundary between what is permissible and what is forbidden by the constitutional requirement has never been precisely fixed, and is incapable of exact delimitation. In the great variety of cases which have arisen, decisions may seem to be difficult of reconcilement; but investigation will generally cause apparent conflicts to disappear when due weight is given to material circumstances which distinguish the cases. If the evident intent and general operation of the tax legislation is to adjust the burden with a fair and reasonable degree of equality, the constitutional requirement is satisfied. We think the provision now under consideration meets this test. Cf. State Railroad Tax Cases, 92 U. S. 575, 612, 23 L. Ed. 663 [669, 673]; Tappan v. Merchants' Nat. Bank, 19 Wall. 490, 504, 22 L. Ed. 189 [195]; Merchants' & M. Nat. Bank v. Pennsylvania, 167 U. S. 461, 464, 17 S. Ct. 829, 42 L. Ed. 236 [237].

"Second. It is settled beyond the admissibility of further inquiry that the equal protection clause of the Fourteenth Amendment does not preclude the states from resorting to classification for the purposes of legislation. F. S. Royster Guano Co. v. Virginia, 253 U. S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989 [990].

"And ' the power of the state to classify for purposes of taxation is of wide range and flexibility.' Louisville Gas & E. Co. v. Coleman, 277 U. S. 32, 37, 48 S. Ct. 423, 425, 72 L. Ed. 770 [773]. But the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' F. S. Royster Guano Co. v. Virginia [253 U. S. 412, 40 S. Ct. 560, 64 L. Ed. 989] supra; Air-way Electric Appliance Corp. v. Day, 266 U. S. 71, 85, 45 S. Ct. 12, 69 L. Ed. 169 [177]; Schlesinger v. Wisconsin, 270 U. S. 230, 240, 46 S. Ct. 260, 70 L. Ed. 557 [564], 43 A. L. R. 1224. The classification, in order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. The test to be applied in such cases as the present one is: Does the statute arbitrarily and without genuine reason impose a burden upon one group of taxpayers from which it exempts another group, both of them occupying substantially the same relation toward the subject-matter of the legislation? 'Mere difference is not enough.' Louisville Gas & E. Co. v. Coleman [277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770] supra; Frost v. Corporation Commission, 278 U. S. 515, 522, 49 S. Ct. 235, 73 L. Ed. 483 [488]."

It should also be kept in mind as stated in the case of Bell's Gap Railroad Company v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 535, 33 L. Ed. 892, that:

"The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon

various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the fourteenth amendment was not intended to compel the states to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the states, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material, *but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice, and which every state, in one form or another, deems it expedient to adopt."*

It would appear, therefore, that a state may adjust its tax system to meet its necessities in all proper and reasonable ways. School taxes in South Dakota are a necessity. This state, under its compact with the United States as expressed in paragraph 4 of article 22 of the State Constitution, has obligated itself as follows: "That provision shall be made for the establishment and maintenance of systems of public schools, which shall be open to all the children of this state."

Is the adjustment of the school tax base provided in the 1931 act reasonable and proper? This court in 1929 could see no proper distinction between agricultural land and other real estate for the purposes of school taxation. However, in 1923 and again in 1931 the State Legislature saw a distinction, and in 1930 the people of this state saw the distinction so plainly that they were

willing to write it into the Constitution of this state. The late Judge Brown was the author of the Simmons v. Ericson opinion and later, while acting as an assistant attorney general, was the author of respondent's brief herein. In that brief Judge Brown said: "But the people of the state saw what the Supreme Court was unable to see, and in consequence of that very decision, they adopted the amendment of 1930. * * *" We can no longer abide by the decision in Simmons v. Ericson, in so far as its language relates to the application of the Federal Constitution to the facts now before us. Since 1929 the severity of the adverse conditions affecting agriculture in this state, of which we are now fully aware, makes complete our realization that this court failed to see in 1929 that which was apparently then plainly visible to the Legislature and the people. Commencing some time prior to 1923 and continuing until this very time, the agricultural industry in this state has been in a serious condition and fighting desperately for its existence. The prices for agricultural products have been far below normal. On the other hand, during this same period school costs have not materially decreased. This court knows that as a part of the general adverse conditions affecting agriculture in this state, prior to the enactment of the 1931 law, the taxes levied for school purposes meant practical confiscation of agricultural lands in many school districts, and especially in those school districts where assessed valuations were high and in which there were high costs of operation due to a large number of children living in an incorporated town or city within the school district boundaries. True, a general economic depression has affected all business and industry, but the Legislature in making this present classification is presumed to have acted upon adequate information, and from what we know of general conditions in South Dakota we cannot say that the classification is either unreasonable or arbitrary.

If this state is going to maintain its compact with the United States and maintain a system of public schools throughout the state comparable with schools of other states, taxes must be paid as well as levied. We believe the Legislature could with reason conclude that, if it insisted upon taxing agricultural lands at the same rate as other real estate for school purposes in those districts where the assessed valuations are high and which have an incorporated town

within their boundaries, the net result would be no income from much of this agricultural land for the reason that this land could not sustain any such tax.

The distinction which the Legislature has drawn is between tracts of agricultural land in relation to school taxes, and lands used for other purposes in such relation. The case is here upon a demurrer to the complaint, and all we have before us is the law itself. The passage of the law by the Legislature raises a presumption of its constitutionality. Bradley v. Richmond, 227 U. S. 477, 33 S. Ct. 318, 57 L. Ed. 603. To overcome this presumption there must be facts of which we will take judicial notice which will permit us to say that there is no rational basis for the distinction. The facts within our knowledge compel just the opposite conclusion. True, in the Simmons v. Ericson Case there were pointed out some common characteristics between agricultural land and other real estate in relation to school taxes, but we do not believe the named characteristics are all-inclusive, or that it was without the range of reason for the Legislature to say that there are certain characteristics inherent in agricultural land that differentiates it from other land in relation to these taxes. We have referred to one of these characteristics, that is, that at the present time at least, we cannot say that it is unreasonable for the Legislature to conclude that agricultural land cannot bear the same burden in relation to school taxes as other land.

We believe it true also that the Legislature could reasonably conclude that the benefit to agricultural land from school taxes is less than the benefit to other lands from the same source. See Clark v. Kansas City, 176 U. S. 114, 20 S. Ct. 284, 44 L. Ed. 392, which held valid a statute which excepted from its operation lands used exclusively for agricultural purposes if owned by individuals, but not if owned by corporations. It is conceivable that the benefits from education so far as real estate is concerned, whether it be the enhanced value of that real estate due to the adequate educational facilities offered or some other benefit, reflects itself less in real estate used exclusively for agricultural purposes than any other land. For example, a merchant's business or even a railroad's business, which is dependent somewhat upon real estate in the operation of the business, might well be quite differently affect-

ed by an adequate educational system located in the community, than the business of agriculture. So far as concerns real estate, which is set apart primarily for homes or residences by being platted, obviously educational advantages reflect themselves in that real estate differently from the manner in which they reflect themselves in land used exclusively for agriculture. Land used exclusively for agriculture consists of a comparatively large tract which is the whole base of the business. This is not true of land used in other businesses. It seems to us that repeatedly courts have sustained classifications founded upon reasons much more obscure than those here presented.

 We believe it reasonable for a Legislature, in an agricultural state, to offer inducements to agriculture through its tax laws. Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; American Sugar Refining Company v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102; Bell's Gap Railroad Co. v. Pennsylvania, supra.

In all probability other considerations occurred to the Legislature in making the distinction, but the possible considerations herein pointed out are sufficient in our opinion to prevent us from holding that there could be no possible rational basis for the legislative classification. This opinion is further confirmed by a reading of the case of Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237, wherein it was held that the differences between bituminous coal and anthracite forms a just basis for their different classification under the tax laws, and the case of State Tax Board of Com'rs v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, wherein it was held that the differences between chain store operation and the conduct of a single store was a sufficient basis for legislative classification for taxation.

The order appealed from is affirmed.

POLLEY and WARREN, JJ., concur.

ROBERTS, J., concurs specially.

SMITH, J., did not sit.

ROBERTS, J. (concurring specially). The Legislature is empowered under the Constitution of this state to classify property

for the purpose of taxation (section 2, art. 11), and it is permissible to constitute agricultural lands a separate class for the purpose of school taxation (section 15, art. 8). This legislative power is not limited or restricted, except that the tax must be uniform on the same class of property and shall be collected for a public purpose only. Thus a broad discretion is vested in the Legislature in the matter of the classification of properties for taxation, and classifications resting upon some reasonable consideration of differences do not contravene the equal protection clause of the Fourteenth Amendment. It has been frequently stated in federal decisions that classification for purpose of taxation "must be reasonable not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Louisville Gas & E. Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 425, 72 L. Ed. 770, and cases cited. The difference need not be great. State Board Tax Commissioners v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 1256, 73 A. L. R. 1464. The fact that we are here concerned with the question of subjection to a tax and not an exemption cannot be ignored. As stated in Louisville Gas & E. Co. v. Coleman, supra: "But classification good for one purpose may be bad for another; and it does not follow that, because the state may classify for the purpose of proportioning the tax it may adopt the same classification to the end that some shall bear a burden of taxation from which others under circumstances identical in all respects save in respect of the matter of value, are entirely exempt."

This court in Simmons v. Ericson, 54 S. D. 429, 223 N. W. 342, fell into the error of assuming that classification depends on differences in the physical nature or condition of the subjects selected or of placing undue emphasis thereon. An examination of decisions reveals that classification is not necessarily based upon any such differences, but upon a variety of considerations. A distinction for taxation purposes between express companies which owned their own means of transportation and those who engaged for hire a railroad or steamship company to transport their merchandise has been sustained. Pacific Express Co. v. Seibert, 142 U. S. 339, 12 S. Ct. 250, 35 L. Ed. 1035. A distinction made in

the taxing system of the state between tracts of one thousand acres or less and those of more than that number of acres has been held sufficient. King v. Mullins, 171 U. S. 404, 18 S. Ct. 925, 43 L. Ed. 214. A tax graduated according to the amount and value of the property, measured by miles, which was in lieu of taxes levied directly on the property, has been held valid. Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 15 S. Ct. 268, 360, 39 L. Ed. 311. The Federal Constitution does not prevent a state from making a separate class of railroad property and levying a tax thereon at a rate not applicable to other property. Michigan Central R. Co. v. Powers, 201 U. S. 245, 26 S. Ct. 459, 50 L. Ed. 744. A statute which imposed an ad valorem tax upon telephone companies with annual earnings of $500 or more, while exempting others whose earnings were less than that amount, were sustained in Citizens' Telephone Co. v. Fuller, 229 U. S. 322, 33 S. Ct. 833, 834, 57 L. Ed. 1206. Mr. Justice McKenna, speaking for the court in that case, said: "The difference, therefore, between the taxpaying and nontaxpaying companies or individuals is that the former, as said by the district court, belong to commercial corporations or enterprises, organized and conducted for the purpose of earning and paying profits as or in the nature of dividends; the latter, the untaxed, or cooperative or farmers' mutual associations, usually unincorporated, conducted at estimated costs, and organized primarily to get for the association cheap telephone service. It is manifest, therefore, that there are marked differences between the taxed and nontaxed companies, and the differences might be pronounced arbitrary if the rule urged by appellant should be applied; that is, that in the taxation of property no circumstance should be considered but its value; or, to use appellant's words, 'each dollar's worth should be treated alike.' But such rigid equality has not been enforced."

The validity of a tax upon those engaging in the business of refining sugar and molasses, but exempting planters and farmers grinding and refining their own sugar and molasses, was upheld in American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102. The owners and operators of anthracite mines who were required to pay a tax upon the value of coal when prepared for market were unsuccessful in their contention that they

were unconstitutionally discriminated against by reason of the fact that owners and operators of bituminous mines were not required to pay a corresponding tax. Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 85, 67 L. Ed. 237. Sustaining an exemption as to vehicles used exclusively in the transportation of agricultural and dairy products in a motor carrier act, the court in Æro Mayflower T. Co. v. Georgia Pub. Serv. Comm., 295 U. S. 285, 55 S. Ct. 709, 711, 79 L. Ed. 1439, said: "We think a classification thus designed to ameliorate the lot of the producers of farm and dairy products is not an arbitrary preference within the meaning and the condemnation of the Fourteenth Amendment. The plight of the * * * farmer has been pictured by the state court. * * * To free him of fresh burdens might seem to a wise statecraft to be a means whereby to foster agriculture and promote the common good."

In view of these and many other federal decisions which could be cited recognizing that a state is not bound by any rigid rule of classification, but is permitted under the Federal Constitution in apportioning the tax burden to make classifications upon differences, not necessarily great or conspicuous, having some basis in reason and not in a spirit of prejudice, it would appear that the statute under review is not violative of the Fourteenth Amendment.

Prior to the enactment of the statute (chapter 194, Laws 1913) providing for the formation of independent consolidated school districts and acts amendatory, a well-defined distinction existed between enactments affecting rural schools and city or town schools; it was the general policy of the Legislature not to permit independent school districts comprising the territory of a city or town to absorb farm lands. Isaacson v. Parker, 42 S. D. 562, 176 N. W. 653; Id., 43 S. D. 142, 178 N. W. 139, 140; Alatalo v. Shaver, 45 S. D. 163, 186 N. W. 872. Under these enactments, a large number of rural or common school districts during years immediately prior to 1921 were consolidated with independent school districts. In commenting upon the change of policy, Judge Whiting in a dissenting opinion in Isaacson v. Parker said: "Thus it may be both unjust and unwise to place it within the power of a congested center of population to overrule the wishes of a majority

of the electors of an outlying territory, yet no one would question the legislative power in this matter. We may be of the opinion that to include 'independent' districts in 'consolidated' districts may not have the effect of 'promoting a better condition in rural schools'; but that is a matter of opinion only, and the Legislature wisely or unwisely, may have thought different." It is common knowledge that tax levies in independent consolidated school districts have been burdensome and that taxes upon agricultural lands in such districts absorbed a large percentage of farm income. The Legislature and likewise the people of this state by constitutional amendment sought to equalize the tax burden and to conserve an existing source of revenue. . Discrimination in a spirit of hostility toward any group of taxpayers was not intended.

Plaintiff does not complain that others similarly situated are immune from a tax to which it is subject, but that others are treated more leniently in the levy of the tax. A slighter distinction, as before stated, is permissible by reason of a graduation than between a tax and no tax. Louisville Gas & E. Co. v. Coleman, supra. We have observed that the contrast need not be between different types of taxes, but that the mode of classification may be based upon differences in subjects selected. While anthracite and bituminous coal are fuels, it was held within the decision of the supreme court in Heisler v. Thomas Colliery Co., supra, that a tax could be placed upon one and not upon the other. It was pointed out that anthracite is used only as a fuel and that on the other hand various products of utility which are "incentives to industries that the state in natural policy might well hesitate to obstruct or burden" are obtained from bituminous coal. Public policy has favored the exemption of agricultural producers from taxation of the methods employed by them to place their products on the markets. American Sugar Refinery Co. v. Louisiana, supra : Æro Mayflower T. Co. v. Georgia Pub. Serv. Comm., supra. It may be well within the power of a state to provide for the direct or indirect partial exemption of agricultural producers by the method employed in the statute under consideration. Agricultural lands, however, have inherent characteristics with respect to their use that so differentiate them as to justify their separate classification. Generally speaking, it may be said that farming is not a

commercial pursuit, but as aptly stated in State ex rel. Stiner v. Yelle, 174 Wash. 402, 25 P.(2d) 91, 94, is " a way of life by means of which in more prosperous times the farmer gained a modest livelihood with security and, perhaps, some financial gain from the rise in land values which might enable him to provide a measure of comfort for his old age." It may be that there are other differences justifying the instant classification for the purpose of apportioning the tax burden, but in my opinion there is a marked difference between land utilized in an agricultural pursuit and lands incident to commercial and other pursuits, sufficient in itself to justify such classification, and that a classification designed to conserve a source of tax revenue and to foster and promote agriculture and the common good is not arbitrary.