TORIGIAN, Appellant v. SAUNDERS et al., Respondents

(97 N.W.2d 586)

(File No. 9744. Opinion filed July 3, 1959)

**George J. Rice,** Aberdeen, for Plaintiff and Appellant.

**Austin & Hinderaker and W. A. Hackett,** Watertown, for Defendants and Respondents.

RENTTO, J. In this litigation plaintiff Torigian seeks a judgment declaring our butterfat tax law unconstitutional. The defendants, other than the Attorney General, are the officers and directors of the American Dairy Association of South Dakota. They moved to dismiss the action for the reason that the complaint failed to state a claim upon which relief could be granted and for the further reason that plaintiff did not have standing to prosecute the same. The motion was granted. On plaintiff's election not to amend, a judgment of dismissal was entered. This appeal is from that judgment. The action was separately dismissed as against the Attorney General but the propriety of that is not involved in this appeal.

The law under attack came into being as Ch. 5, Laws of 1951, and appears as SDC Supp. Ch 4.22. It was drastically amended by Ch. 4, Laws of 1955 and further revised by Ch. 5, Laws of 1957 which was adopted as an emergency measure. It created the Dairy Association and empovered it to administer the law and provided its membership and governing board. With some exceptions not here material an assessment of ½¢ per pound was levied on all butterfat produced in the state, to be deducted from the price paid the producer. These deductions are paid to the State Treasurer and by him placed in a special fund for the Dairy Association.

This fund and its accumulations were by said law appropriated for the uses and purposes of that Association as prescribed by law. The Association was empowered to use these funds in support of itself and its purposes, but only to the extent that such money is available. To accomplish payment for these purposes the Association approved vouchers on which the State Auditor issued warrants upon such fund.

Among the powers and duties of the Association the act prescribes the following:

"To conduct scientific research for the purpose of developing and discovering health, food, thera-

peutic, dietetic, and industrial uses for dairy products" and,

"To make in the name of the Association such advertising contracts and other agreements as it deems desirable, and to promote the sale and consumption of dairy products on either a state or national basis." and

"The Association shall plan and conduct campaigns for dairy commodity advertising, publicity, and sales promotion, research and educational campaigns, to increase the consumption of dairy products, and may contract for any advertising, publicity, and sales promotion, research and educational service."

■ Torigian is engaged in buying, selling, manufacturing, processing and shipping dairy products. As such he is a dealer under the law in question and by its provisions is required to deduct the assessment from the price paid the producer and remit the same to the State Treasurer. He is also required to keep records of all butterfat handled by him which is subject to the assessment. The form and content of these records is prescribed by the Association and are open to inspection by it. His failure to do the acts required of him under the law makes him subject to civil and criminal penalty. His claim of unconstitutionality challenges specifically the exemption provision of the law. Also he attacks the entire enactment on the ground that funds derived from this assessment are not for a public purpose.

■ The statute provides that any producer who applies to the treasurer of the Association for a permit of exemption from the provisions of the law shall be issued such permit. Torigian claims this provision is unconstitutional in that it provides for taxation that is not equal and uniform. He is not within the class to whom this provision applies and is therefore without standing to urge its unconstitutionality. Mundell v. Graph, 62 S.D. 631, 256 N.W. 121; Petersen v. Hohf, 64 S.D. 272, 266 N.W. 252. Consequently we do not reach the merits of this attack.

 The other ground of his claim of unconstitutionality—the absence of a public purpose, challenges the power of the legislature to enact the law in question. It is well settled in this state that a taxpayer or an elector having no special interest may institute an action to protect a public right. Lien v. Northwestern Engineering Co., 74 S.D. 476, 54 N.W.2d 472. The constitutionality of legislation affecting the use of public funds is a matter of public right. State ex rel. Parker v. Youngquist, 69 S.D. 423, 11 N.W.2d 84. But this litigation is not brought by Torigian as a taxpayer's action. Rather it is brought by him as a person affected by the act in question. Accordingly he does not have standing to maintain it unless it appears that he is directly affected by the enforcement of the law in question.

██ ██ The determination of the constitutionality of legislative enactments in declaratory judgment proceedings is authorized by our statute SDC 37.0102, which is the same as Section 2 of the Uniform Declaratory Judgment Law. In such proceeding a challenging party must have the same interest involved as he is required to have to be entitled to attack the statute by any other procedure. Borchard, Declaratory Judgments, 2d Ed., p. 50; Annotation 174 A.L.R. 549. See also Danforth v. City of Yankton, 71 S.D. 406, 25 N.W.2d 50. In a proceeding such as this it must be an interest special or peculiar to him and not merely an interest that he has in common with the public generally.

 This court has said "it will not decide constitutional questions * * * until it clearly appears that the constitutional question is raised by one whose substantial interests are actually affected." State v. Urban, 60 S.D. 614, 245 N.W. 474, 475. In Great Northern Railway Co. v. Whitfield, 65 S.D. 173, 272 N.W. 787, 790, 111 A.L.R. 1475, in holding that the plaintiff had no standing to question the constitutionality of an act it is written, "There is no showing that any substantial interest of appellant is or will be affected, * * *." Obviously the phrase "substantial interest" is an inexact term. Borchard, supra, p. 36. At page 50, he sums it up thus: "When the attack is upon a statute, the plaintiff must show not only the existence of the statute, but the fact that he is personally affected by it to an extent

warranting judicial relief. This, of course, is only a principle, the application of which rests in judicial appreciation and discretion."

It seems to us that the interest of Torigian affected by this statute is an interest special and peculiar to him. Clearly the burdens placed on him as a dealer are not such as he suffers in common with the people generally. Consequently we hold that he has standing to question the public purpose of this enactment. While the extent of these burdens is dependent on the amount of business he does, his right to challenge the law is not. Whatever their amount, the burdens of collection and record keeping are borne by him. These are real and direct.

The Association argues that in as much as these burdens are such as the state may legally impose on him, he is without standing to attack the law, citing State ex rel. Botkin v. Welsh, 61 S.D. 593, 251 N.W. 189. That case did not discuss the matter of legal standing to urge unconstitutionality. In the connection urged it held only that burdens somewhat akin to those placed on Torigian by this act did not violate constitutional due process. Our present concern is not whether these burdens violate due process, but rather if they give the one so burdened standing to question the constitutionality of the law. We think they do.

The Welsh case in this connection relies on the authority of Pierce Oil Corp. v. Hopkins, 264 U.S. 137, 44 S.Ct. 251, 68 L.Ed. 593, as do most of the other cases cited on this point by the Association. The Pierce case decides the constitutional issue involved but does not mention the matter of standing to raise the question of constitutionality, even though courts do not decide constitutional questions if there is any other ground on which a case can be disposed of. As we understand the Association's argument it contends that a party does not have standing to question the constitutionality of an enactment unless its impact on him is unconstitutional. We do not agree. The books are full of cases in which persons were held to have standing to question enactments regulating their professions or occupations even though such regulations were found to be constitutional.

■ With these preliminary matters out of the way we reach the question of whether the funds provided for in this act are levied and collected for a public purpose as required by § 2, art. XI of our Constitution. In considering this feature we proceed from the premise of a presumption of constitutionality. In support of his contention that they are not, Torigian relies largely on views expressed by the members of this court In re Opinion of the Judges, 59 S.D. 469, 240 N.W. 600. In considering that pronouncement it must be borne in mind that advisory opinions are not judicial decisions and are not binding upon the court as precedent. Bowe v. Secretary of Commonwealth, 320 Mass. 230, 69 N.E.2d 115, 167 A.L.R. 1447; 21 C.J.S. Courts § 211; 14 Am.Jur., Courts, § 75. See also In re Opinion of the Judges, 34 S.D. 650, 147 N.W. 729.

■ The general rule as to the public purpose of the expenditure of public funds is stated in 81 C.J.S. States § 133 as follows:

"Generally, in connection with the validity of the expenditure of state funds, what is for the public good, or what is a public purpose, is a question for the legislature to decide, with respect to which it is vested with a large discretion, which cannot be controlled by the courts unless its action is clearly evasive."

The statement of this rule in 51 Am.Jur., Taxation, § 339 is of like tenor.

■ That rule has been given effect in South Dakota. In Payne v. Jones, 47 S.D. 488, 199 N.W. 472, 473, this court said:

"The Legislature is vested with a large discretion which cannot be controlled by the courts. If it does not clearly appear from the act and appropriation that it is for a purely private purpose, the court cannot so decide. If any reasonable doubt exists as to whether it is for a public or private purpose, the court must uphold the legislative act."

In Wheelon v. South Dakota Land Settlement Board, 43 S.D. 551, 181 N.W. 359, 14 A.L.R. 1145, this court quoted

much concerning this rule that was relied on by the Washington court in State ex rel. State Reclamation Board v. Clausen, 110 Wash. 525, 188 P. 538, 14 A.L.R. 1133. One of these statements is this pointed conclusion by Justice Ladd speaking for the New Hampshire court:

> "After the Legislature and the executive have both decided that the purpose for which a tax is laid is public, nothing short of a moral certainty that a mistake has been made can, in my judgment, warrant the court in overruling that decision, especially when nothing better can be set up in its place than the naked opinion of the court as to the character of the use proposed." [Perry v. City of Keene, 56 N.H.514].

■ ■ In the Wheelon case this court also indicated that the determination of whether a purpose was public or private is not a matter of exclusive legal logic but rather one more or less of policy and wisdom "properly determinable in the light of public welfare, present and future, * *". It follows, we think, that funds which are expended to promote the public welfare of the state must be considered expended for a public purpose. In treating of the importance of agriculture to the general welfare of our state that case approved this statement:

> "The wealth produced by the farmers of this state is the lifeblood of the business interest of the state; hence the conservation and securing of the wealth produced by the farmers to them is of vital interest not only to the farmers, but to every one who is engaged in the carrying on of business within the state."

We realize that thirty-eight years have passed since that utterance during which changes have taken place in the economic life of our state, including many in agriculture, but agriculture is still our primary industry—and dairying is a substantial component of such activity. While these facts are known to most people the extent and economic impact of these activities are probably better known to the members of the legislature. That dairying is

an important industry in South Dakota was recognized by this court in Schmitt v. Nord, 71 S.D. 575, 27 N.W.2d 910, 912, as was also the fact that it was experiencing increasing detrimental competition from butter substitutes. In sustaining a tax on such substitutes it was said in that case that the legislature could "reasonably conclude that the fiscal interest of the state would be served by encouraging our dairy industry."

The promotion of this facet of our agricultural activity, which is increasing in its relative importance in this field, seems to us a matter with which the legislature could properly be concerned. Whether the promotion of the dairy industry as envisioned in this act would accomplish the intended purpose is a practical question peculiarly within the knowledge of the legislature. By adopting the act it answered in the affirmative. Clearly that also was within its power. Consequently we must hold that the funds provided for in the act are levied and collected for a public purpose.

It is apparent from the cases that this type of legislation is not entirely new. See annotation following Floyd Fruit Co. v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562. Somewhat similar efforts on behalf of the apple industry were more recently sustained in Miller v. Michigan State Apple Commission, 296 Mich. 248, 296 N.W. 245; sweet potatoes in Louisiana State Department of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202; and potatoes in State v. F. H. Vahlsing, Inc., 147 Me. 417, 88 A.2d 144. In Lingamfelter v. Brown, 132 W.Va. 566, 52 S.E.2d 687, similar legislation as to their apple industry was invalidated on the ground that it occupied an unimportant position in the economy of that state. In the Stuttgard Rice Mill Co. v. Crandall 203 Ark. 281, 157 S.W.2d 205, a like view was indicated as to similar legislation concerning their rice industry.

Lastly it is faintly suggested that this type of legislation is unwise. That may well be—depending on the personal views of the beholder. But with that we may not be concerned. The wisdom of this enactment is a matter of

legislative policy. Our function is confined to the field of legislative power.

Affirmed.

HANSON, P. J., and ROBERTS and SMITH, JJ., concur.

BIEGELMEIER, J., not participating.