SCHMITT, Respondent, v. NORD, Appellant

(27 N. W.2d 910)

(File No. 8869. Opinion filed June 23, 1947.)

**George T. Mickelson,** Atty. Gen., and **Benj. D. Mintener,** Asst. Atty. Gen., for defendants and Appellants.

**Danforth & Bleeker,** of Mitchell, and **McFarland & Sellars,** of Washington, D. C., for plaintiff and Respondent.

SMITH, J. This is an appeal from a judgment which restrains the defendants, as officers of the state, from enforcing SDC Chapter 57.40, originally enacted as Ch. 258, Laws of 1931, on the ground that the enactment is repugnant to provisions of the Federal and State Constitutions.

Sections SDC 57.4001 and 57.4003 read as follows:

"There is levied and assessed and shall be collected and paid to the State Treasurer a tax of ten cents upon each pound of butter substitute sold in South Dakota to consumers, to be paid prior to or at the time of the sale and delivery to the consumer. Before any package containing such substitute for butter is delivered to the consumer or offered or exposed or kept for sale in open cartons or removed from such cartons, each package shall have securely affixed thereto suitable stamp or stamps denoting the tax thereon. The display or possession by any dealer of any package, except in original unopened cartons or other containers, which do not bear the required stamp or stamps, shall constitute prima facie evidence of violation of this section. Such stamps shall be properly affixed and cancelled prior to such display or removal for consumption, under such regulations as the State Treasurer shall prescribe. When such substitutes for butter are sold by a retail dealer, to consumers in cartons or other original unopened containers, said stamps, properly cancelled, may be affixed to each such original unopened carton or container and not to each package contained therein." SDC 57.4001.

"The money received by the State Treasurer from the stamp taxes herein imposed shall be credited by the State Treasurer to the general fund of the state. From the total amount of taxes to be raised by levy against real and personal property a reduction shall be made equal to the amount of the taxes collected annually under the provisions of this chapter, and the balance only, such reduction has been made, shall be levied against such real and personal property. It shall be and is made mandatory on all officers concerned to make such reductions." SDC 57.4003.

The remaining sections of the act deal with preparation and distribution of the stamps (57.4002), enforcement (57.4004), and penalties (57.9936, 57.9937).

The plaintiff, since prior to 1931, has owned and operated a grocery at Alexandria. His complaint alleges, and his proof tends to show, that the tax prevented and discouraged

the purchases of eleomargarine at his store and destroyed what had been a profitable department of his retail business.

Viewing the act as a revenue measure, it was urged that because the differences between butter and oleomargarine are insufficient to justify separate classification, the statutes in operation subject plaintiff to unequal and non-uniform taxation contrary to Article 6, § 17, of the Constitution of South Dakota and the Fourteenth Amendment to the Constitution of the United States. The trial court sustained this contention of the plaintiff.

The act as a whole indicates that it is aimed at dealers in butter substitutes and reflects an intention to lay an excise tax upon the privilege or occupation of selling butter substitutes to consumers. State ex rel. Botkin v. Welsh, 61 S. D. 593, 251 N.W. 189; In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321; State ex rel. Sioux Falls Motor Co. v. Welsh, 65 S. D. 68, 270 N. W. 852; and Barnes v. Stout, 65 S. D. 592, 276 N. W. 920. We so construe it. It is a settled principle, dealing with such occupational or privilege taxes, that if the classification is justified, the cited constitutional provisions are satisfied if equal treatment is accorded all within the class. State ex rel. Botkin v. Welsh, supra. We turn to the matter of classification.

A short answer to the contention that the classification is not justified seems adequate in view of the undisputed facts and the settled state of the law.

Plaintiff is engaged in the business of selling oleomargarine which conforms to the standards promulgated as of September 6, 1941, under the Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C.A. § 301 et seq. Although the product plaintiff sells and butter are both foods and the one is used as a substitute for the other, they are essentially different. The one is the product of the factory while the other stems from the cow and very largely from our great dairy industry. It must be conceded the legislature could reasonably conclude that the costs which go into the butter sold to consumers in our state embrace a substantial contribution to state revenues, while the costs which enter into

the production of oleomargarine sold to our consumers include but a very slight contribution to state revenues. Further, it could, we think, reasonably conclude that the fiscal interest of the state would be served by encouraging our dairy industry.

 The test to be applied to the act is the same under both constitutions. Is this classification reasonable, and does it bear some relation to the subject in hand, are the questions to be answered. State ex rel. Botkin v. Welsh, supra. The legislature is clothed with a broad discretion in dealing with the intensely practical problem of providing adequate public revenues. If its ultimate decisions are based on reason, they may rest on very narrow distinctions. The facts stated demonstrate that the classification is valid because founded upon differences related to state revenue. Cf. Great Northern Railway Co. v. Whitfield, 65 S. D. 173, 272 N. W. 787, 111 A.L.R. 1475; and Montgomery Ward & Co. v. Commissioner of Taxation, 216 Minn. 307, 12 N. W.2d 625. The precise classification has been upheld by the United States Supreme Court. Magnano Co. v. Hamilton, 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109. And see Southwestern Oil Co. v. State of Texas, 217 U. S. 114, 30 S. Ct 496, 54 L. Ed. 688; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; and Ohio Oil Co. v. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. Ed. 775.

 The trial court sustained a further contention of plaintiff that although the challenged enactment was a revenue measure in form, it was motivated by a primary legislative purpose to curtail and prohibit the manufacture, sale and consumption of oleomargarine and was therefore repugnant to the Fifth and Fourteenth Amendments to the Constitution of the United States, and to sections 1 and 2 of Article VI of the Constitution of South Dakota.

This phase of the decision of the trial court is in the teeth of the holding of the Supreme Court of the United States in the case of Magnano Co. v. Hamilton, supra, wherein that court sustained the validity of a similar statute of the State of Washington, and of many other pronounce-

ments of that court which establish the principle that if an act appears on its face to be constitutional, to inquire into the motives of the legislative body for the purpose of declaring it unconstitutional is beyond the competency of the courts. Sonzinsky v. United States, 300 U. S. 506, 57 S. Ct. 554, 81 L. Ed. 772; Henneford v. Silas Mason Co., 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814; and McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561.

In Sonzinsky v. United States, supra, where the National Firearms Act, 26 U. S. C. A. (1934 Ed.) § 1132 et seq., 26 U. S. C. A. Int. Rev. Code, §§ 2700, 2720 et seq., was under attack, the contention was that "the present levy is not a true tax, but a penalty imposed for the purpose of suppressing traffic in a certain noxious type of firearms, the local regulation of which is reserved to the states because not granted to the national government." [300 U. S. 506, 57 S. Ct. 555.] This contention rested on the amount of the tax.

The court said:

"On its face it is only a taxing measure, and we are asked to say that the tax, by virtue of its deterrent effect on the activities taxed, operates as a regulation which is beyond the congressional power.

"Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has regulatory effect. (Citing cases); and it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed. (Citing cases).

"Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of the courts. (Citations) They will not undertake, by collateral inquiry as to the measure of the regulatory effect of a tax, to ascribe to

Congress an attempt, under the guise of taxation, to exercise another power denied by the Federal Constitution." (Citations)

In Henneford v. Silas Mason Co., supra, the attack was upon a statute of the state of Washington inposing a use tax. The court said [300 U. S. 577, 57 S. Ct. 528]: "We are told that a tax upon the use, even though not unlawful by force of its effects alone, is vitiated by the motives that led to its adoption. These motives cause it to be stigmatized as equivalent to a protective tariff. But motives alone will seldom, if ever, invalidate a tax that apart from its motives would be recognized as lawful."

In McCray v. United States, supra, the contention was that an Act of Congress, Aug. 2, 1886, § 8, 24 Stat. 210, as amended, 26 U.S.C.A. Int. Rev. Code § 2301, imposing an excise of ten cents a pound on oleomargarine colored any shade of yellow so as to look like butter was motivated by a purpose to exercise a power of regulation reserved to the states and was therefore invalid. In rejecting the contention that it could strike down what appeared on its face to be a lawful exercise of power on the assumption that a wrongful motive caused the power to be exerted, the court said [195 U. S. 27, 24 S. Ct. 776]:

"It is, of course, true, as suggested, that if there be no authority in the judiciary to restrain a lawful exercise of power by another department of the government, where a wrong motive or purpose has impelled to the exertion of the power, that abuses of a power conferred may be temporarily effectual. The remedy for this, however, lies, not in the abuse by the judicial authority of its functions, but in the people, upon whom, after all, under our institutions, reliance must be placed for the correction of abuses committed in the exercise of a lawful power. This was aptly pointed out in Champion v. Ames, 188 U. S. 321, [23 S. Ct. 321, 47 L. Ed. 492] where, speaking through Mr. Justice Harlan, it was said (p. 363, L. Ed. § 504, Sup. Ct. Rep. p. 329):

" 'But if what Congress does is within the limits of its power, and is simply unwise or injurious, the remedy is

that suggested by Chief Justice Marshall in *Gibbons v. Ogden*, [9 Wheat 1, 6 L.Ed. 23], when he said: "The wisdom and the discretion of Congress, their identity with the people, and the influence which their constituents possess at elections, are, in this, as in many other instances, as that, for example, of declaring war, the sole restraints on which they have relied, to secure them from its abuse. They are the restraints on which the people must often rely solely, in all representative governments." ' "

In *Magnano Co. v. Hamilton*, supra, as we have indicated, the act assailed required one engaged in the business of selling butter substitutes to pay an excise tax of fifteen cents per pound on substitutes sold. In dealing with a contention similar to the one made below the court said [292 U. S. 40, 54 S. Ct. 602]:

"The statute here under review is in form plainly a taxing act, with nothing in its terms to suggest that it was intended to be anything else. It must be construed, and the intent and meaning of the Legislature ascertained, from the language of the act, and "the words used therein are to be given their ordinary meaning unless the context shows that they are differently used. Child Labor Tax Case, supra, [Bailey v. Drexel Furniture Co.] 259 U. S. 20, 42 S. Ct. 449, 66 L.Ed. 817, [820], 21 A. L. R. 1432. If the tax imposed had been five cents instead of fifteen cents per pound, no one, probably, would have thought of challenging its constitutionality or of suggesting that under the guise of imposing a tax another and different power had in fact been exercised. If a contrary conclusion were reached in the present case, it could rest upon nothing more than the single premise that the amount of the tax is so excessive that it will bring about the destruction of appellant's business, a premise which, standing alone, this court heretofore has uniformly rejected as furnishing no juridical ground for striking down a taxing act. As we have already seen, it was definitely rejected in the Veazie Bank Case, [Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed 482] where it was urged that the tax was 'so excessive as to indicate a purpose

on the part of Congress to destroy the franchise of the bank'; in the McCray Case, where it was said that the discretion of Congress could not be controlled or limited by the courts because the latter might deem the incidence of the tax oppressive or even destructive; in the Alaska Fish Case, [Alaska Fish Salting & By-Products Co. v. Smith, 255 U. S. 44, 41 S. Ct. 219, 65 L. Ed 489] from which we have just quoted; and in the Child Labor Tax Case, where it was held that the intent of Congress must be derived from the language of the act, and that a prohibition instead of a tax was intended might not be inferred solely from its heavy burden.

"From the beginning of our government, the courts have sustained taxes although imposed with the collateral intent of effecting ulterior ends which, considered apart, were beyond the constitutional power of the lawmakers to realize by legislation directly addressed to their accomplishment. Those decisions, as the foregoing discussion discloses, rule the present case."

On the other hand, where the motive or purpose to exert a power not possessed is plainly revealed on the face of the legislative act, the Supreme Court of the United States has not hesitated to pronounce the act unconstitutional and invalid. Child Labor Tax Case, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432; Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; and United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233.

In the Child Labor Tax Case, supra, for example, the statute in question purported to lay an excise of ten per cent of the net profits received during a year in which an employer of a described kind employed children under certain ages and longer than specified hours. The court said [259 U.S. 20, 42 S.Ct. 450],

"The law is attacked on the ground that it is a regulation of the employment of child labor in the states—an exclusively state function under the federal Constitution and within the reservations of the Tenth Amendment. It is defended on the ground that it is a mere excise tax levied by the Congress of the United States under its broad power

of taxation conferred by section 8, article 1, of the federal Constitution. We must construe the law and interpret the intent and meaning of Congress from the language of the act. The words are to be given their ordinary meaning unless the context shows that they are differently used. Does this law impose a tax with only that incidental restraint and regulation which a tax must inevitably involve? Or does it·regulate by the use of the so-called tax as a penalty? If a tax, it is clearly an excise. If it were an excise on a commodity or other thing of value, we might not be permitted under previous decisions of this court to infer solely from its heavy burden that the act intends a prohibition intsead of a tax. But this act is more. It provides a heavy exaction for a departure from a detailed and specified course of conduct in business. That course of business is that employers shall employ in mines and quarries, children of an age greater than sixteen years; in mills and factories, children of an age greater than fourteen years, and shall prevent children of less than sixteen years in mills and factories from working more than eight hours a day or six days in the week. If an employer departs from this prescribed course of business, he is to pay to the government one-tenth of his entire net income in the business for a full year. The amount is not to be proportioned in any degree to the extent or frequency of the departures, but is to be paid by the employer in full measure whether he employs five hundred children for a year, or employs only one for a day. Moreover, if he does not know the child is within the named age limit, he is not to pay; that is to say, it is only where he knowingly departs from the prescribed course that payment is to be exacted. Scienters are associated with penalties, not with taxes * * * In the light of these features of the act, a court must be blind not to see that the so-called tax is imposed to stop the employment of children within the age limits prescribed. Its prohibitory and regulatory effect and purpose are palpable. All others can see and understand this. How can we properly shut our ·minds to it? * * *

"Out of a proper respect for the acts of a co-ordinate branch of the government, this court has gone far to sustain

taxing acts as such, even though there has been ground for suspecting, from the weight of the tax, it was intended to destroy its subject. But in the act before us the presumption of validity cannot prevail, because the proof of the contrary is found on the very face of its provisions. * * *"

That the decisions from which we have quoted rule the Federal issue embraced in this contention of plaintiff and establish the error of the trial court in dealing with that branch of the case, we do not doubt. We share the views expressed in these decisions and therefore hold that the trial court also erred in pronouncing the act repugnant to sections 1 and 2 of Article VI. of the Constitution of South Dakota. The principles announced in the cited cases have gained universal support. 11 Am. Jur. 818.

██ The purpose of the legislature to "tax" is expressed in unambiguous language. The act reveals no other purpose. The legislature possessed the power to impose an excise tax of the character and kind the act describes. State ex rel. Botkin v. Welsh, supra; In re Watson, supra. The trial court, however, concluded that the legislature had adopted the phraseology of taxation to conceal a purpose to exert a power it did not possess, viz., the power to prohibit the business of selling butter substitutes to consumers. In so concluding the trial court considered a resolution of a tax conference, and a message of the Governor which were before the legislature at the time the act was adopted, a so-called admission in the answer of defendants that the "act was adopted for the purpose of equalizing, to some extent, the tax burden as between the dairy farmer and the oleomargarine and butter substitute industry" together with the burdensome nature of the rate. In other words, the trial court considered facts for the purpose of finding whether the legislature had exerted a lawful power under the influence of an improper motive. This was beyond its competence. Such conduct on the part of the legislature would amount to an abuse of one of its constitutional powers. Power abused does not cease to be power. Control of the exercise of legislative power is not a function of the courts. It is the absence of power to legislate which a court

may declare in order to enforce the rights of litigants under the constitutions of the nation and state.

■■ The trial court indicated that the burdensome nature of the rate imposed appeared on the face of the act and was sufficient to warrant a conclusion that the primary purpose was to "prohibit" and not to "tax." The question is asked, "How can the court fail to understand and know what is understood by all others?" We need not determine whether an imposition could be so excessive as to express a legislative intent to exert some power other than the power to raise revenue. The question is not presented by this act. The rate here imposed is within the reach of the legislative power and it operated to produce revenue. Its burdensome nature may give rise to strong suspicion of a purpose to prohibit, but suspicion, even though shared by all men, is not enough to warrant a court in pronouncing a legislative act unconstitutional. We have repeatedly reaffirmed our adherence to the principle that every presumption is in favor of the validity and propriety of legislative action and that no statute should be held unconstitutional by any court unless its infringement of constitutional restrictions is so plain and palpable as to admit of no reasonable doubt.

■ That which has been said with reference to the foregoing contention of plaintiff disposes of his remaining proposition. The trial court sustained plaintiff's contention that the challenged act was adopted for the purpose of establishing a subsidy for the butter industry and not for the purpose of raising revenue and was therefore repugnant to section 20 of Article XVII of the Constitution of South Dakota dealing with monopolies and trusts.

■ Without so deciding, we accept the assumption that a legislative act avowedly creating a subsidy for the benefit of the butter industry would violate public policy as revealed by the cited constitutional provisions. In terms the act we are considering does not create such a subsidy. On its face it is only a revenue act, and as we have indicated, the legislature was possessed of power to enact this precise measure. The trial court was without power to inquire into the motives of the legislature in exerting this power

for the purpose of declaring the act repugnant to Article XVII, section 20, of the state Constitution.

The judgment is reversed, the cause remanded, and the trial court is directed to enter judgment dismissing plaintiff's complaint on the merits.

All the Judges concur.

POLLEY, J., not sitting.