**In the Matter of the Petition of N. C. B. CAREERS, INC., d/b/a National College of Business, For Tax Exemption and Refund in Regard to Sales and Use Tax.**

**No. 13109.**

Supreme Court of South Dakota.

Argued Oct. 15, 1980.

Decided Nov. 19, 1980.

Michael M. Hickey, of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellant N. C. B. Careers, Inc.

Walter W. Andre, Asst. Atty. Gen., Pierre, for Dept. of Revenue of the State of

South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

DUNN, Justice.

This is an appeal from a judgment by the circuit court which affirmed the findings of fact, conclusions of law and order of the Secretary of Revenue. The circuit court further found that National College of Business (N. C. B.) is not qualified for an exemption as a religious educational institution, as contemplated by SDCL 10–45–14 and SDCL 10–46–15, and therefore not entitled to a refund of taxes. N. C. B. was then ordered to pay the South Dakota Department of Revenue (Department) $23,192.14 with interest. From this judgment of the circuit court N. C. B. appeals. We affirm.

N. C. B. was established as a profit-making corporation in 1964 and operated as such until 1974. N. C. B. is currently a South Dakota nonprofit corporation which operates an accredited institution of higher education in South Dakota. N. C. B. is a tax exempt entity under the Internal Revenue Code. It is also exempt from South Dakota property taxes on its facilities which are used exclusively for accomplishment of its educational purposes.

Prior to this controversy, N. C. B. had paid to Department $82,629.46 in sales and use taxes. Pursuant to an audit conducted in May of 1978, Department requested an additional $19,667.24 plus penalty and interest be paid by N. C. B.

In July of that year, N. C. B. requested the necessary forms to apply for an exemption from sales and use taxes as provided for in SDCL 10–45–14 and SDCL 10–46–15. Department informed N. C. B. that no such forms were available, their basic position being that sales and use tax exemption was made on an ad hoc basis. Thereafter, N. C. B. filed a request for a refund of all monies paid by it for sales and use taxes, for a reversal of the May audit, and for exemption from further payment of sales and use taxes.

Former Secretary of Revenue Coler held a hearing on N. C. B.'s requests on October 6, 1978. A final decision was rendered on June 5, 1979, by Secretary of Revenue Zellmer,[1] which held that N. C. B. does not qualify for exemption from sales and use taxation, which was appealed to the circuit court. After a hearing and presentation of evidence, the circuit court issued a judgment affirming the Secretary's decision.

The focus of this appeal is on SDCL 10–45–14 and SDCL 10–46–15, and their relation to the South Dakota and United States Constitutions. SDCL 10–45–14, dealing with sales taxes, provides, in part:

There is hereby specifically exempted from the provisions of this chapter and from the computation of the amount of tax imposed by it, the gross receipts from sales of tangible personal property and the gross receipts from sales, furnishing, or service of gas, electricity, water and communication service to and for use by *religious educational institutions* and *nonprofit, charitable hospitals* .... (Emphasis added.)

SDCL 10–46–15, dealing with use taxes, provides, in part:

The gross receipts from sales of tangible personal property and the gross receipts from sales, furnishing, or service of gas, electricity, water and communication service to and for use by *religious educational institutions* and *nonprofit, charitable hospitals* ... are hereby specifically exempted from the tax imposed by this chapter .... (Emphasis added.)

N. C. B. raises numerous issues on appeal, all but one of which deal with the constitutionality of these statutes. The constitutional issues can be restated as follows: Do these statutes violate Article VI, § 3, and Article VIII, § 16 of the South Dakota Constitution[2] and the First Amendment to

---

1. Secretary Phil Coler, who conducted the initial hearing, died shortly thereafter; fortunately, the hearing was transcribed. Steven Zellmer was appointed Secretary of Revenue on February 1, 1979, and rendered his final decision on this matter on June 5, 1979.

2. Article VI, § 3 of the South Dakota Constitution provides, in part:

the United States Constitution? And do these statutes deny N. C. B. equal protection under the law?

■ The general rule on the constitutionality of statutes is stated in *Crowley v. State*, 268 N.W.2d 616, 618 (S.D.1978), as:

When examining the validity of [a] statute it should be noted that every presumption is indulged in favor of the statute's validity, and a statutory discrimination will not be set aside when any state of facts may reasonably be conceived to justify it. All presumptions are in favor of the constitutionality of a statute and this continues until the contrary is shown *beyond a reasonable doubt.* (Emphasis added.)

Therefore, a heavy burden is placed upon N. C. B. if it is to prevail. It must show *beyond a reasonable doubt* that SDCL 10–45–14 and 10–46–15 are unconstitutional.

N. C. B. first assails these statutes as being impermissible aids to religion. In support of this attack it cites *Synod of Dakota v. State*, 2 S.D. 366, 50 N.W. 632 (1891), as the leading South Dakota case in this area. In *Synod*, Pierre University brought suit to recover from the state on a tuition contract. The contract provided that the state would pay the tuition of a certain number of students. Pierre University was organized by the Presbyterian church. Therein we stated that "[t]he paying of the tuition of pupils in the Pierre University ... will, in our opinion, be for the benefit of or aid such school or institution, and is clearly within the prohibition of the constitution." *Synod*, 2 S.D. at 375, 50 N.W. at 635.

*Synod* is inapposite because it dealt with a direct appropriation of money to a religious educational institution. Here it is not a direct appropriation. Rather it is an exemption which merely relieves these institutions from supporting the state.

[N]or shall any preference be given by law to any religious establishment or mode of worship. No money or property of the state shall be given or appropriated for the benefit of any sectarian or religious society or institution.

This is more akin to *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). A property tax exemption was challenged as an impermissible contribution to religious bodies, thereby violating the constitutional prohibitions against establishment of religion. The *Walz* Court in upholding the exemption stated:

The grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state.... The exemption creates only a minimal and remote involvement between church and state ....

397 U.S at 675–676, 90 S.Ct. at 1415, 25 L.Ed.2d at 705 (citations omitted).

■ As in *Walz*, this is not sponsorship. No monies have been appropriated, nor has anything else been given to aid religion. N. C. B. has failed to carry its burden of showing these statutes unconstitutional beyond a reasonable doubt. We, therefore, refuse to find this tax exemption violative of the prohibitions against aid to religion.

Next we turn to the charge that these statutes deny N. C. B. equal protection under both the South Dakota and United States Constitutions. Because the "test to be applied to the act is the same under both constitutions," *Schmitt v. Nord*, 71 S.D. 575, 577, 27 N.W.2d 910, 912 (1947), we will deal with both of these issues jointly.

In *Great Northern Ry. Co. v. Whitfield*, 65 S.D. 173, 181, 272 N.W. 787, 791 (1937) (citations omitted), we stated the basic rule in equal protection cases as:

It is settled beyond the admissibility of further inquiry that the equal protection clause of the Fourteenth Amendment does not preclude the states from resorting to classification for the purposes of legislation....

Article VIII, § 16 of the South Dakota Constitution provides, in part:
No appropriation of lands, money or other property or credits to aid any sectarian school shall ever be made by the state ... to be used for sectarian purposes ....

" . . . '[T]he power of the state to classify for purposes of taxation is of wide range and flexibility.' . . . But the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' . . . "

The mere fact that a statute may discriminate in favor of a certain class does not make it arbitrary. *State v. Welsh*, 61 S.D. 593, 251 N.W. 189 (1933). " . . . 'Our duty is to sustain the classification adopted by the Legislature if there are substantial differences. . . . Such differences need not be great.' " 61 S.D. at 643, 251 N.W. at 211.

■ The legislature has set the parameters of exemption as being either a religious educational institution or a nonprofit, charitable hospital. The classification is a very narrow one, but this alone is not enough to render a classification arbitrary, unreasonable, and violative of equal protection. N. C. B. must not only show that it is similarly situated with the exempt religious educational institutions but also demonstrate that it has been subjected to an arbitrary classification, to establish that it has been denied equal protection. Although both N. C. B. and the religious educational institutions provide educational services, that by itself does not make them similarly situated.

The religious educational institutions were shown at the hearing to have a historic attachment or relationship with their respective churches and were founded by their *churches.* They are nonprofit and from conception their mission was to provide a religious and temporal education for their young people. In effect they maintain religious and Christian educational institutions at great cost to their respective religions.

As stated previously, N. C. B. in contrast was established in 1964 as a proprietary school and until 1974 it was organized entirely for profit. N. C. B. prepares people for a specific vocational task. Its only cor-

porate mission prior to 1974 was to perform this educational service at a profit to its shareholders. In 1974 N. C. B. Careers, Inc. was established as a nonprofit corporation, but two other corporations, Foundation and N. C. B. Properties, are associated with N. C. B. in varying degrees. N. C. B. Properties is not a nonprofit corporation. This three-way relationship results in another difference between N. C. B. and the religious educational institutions. All church sponsored schools would be of a nonprofit nature, while N. C. B.'s underlying affiliations involve a "for profit" corporation. Finally, the articles of incorporation do not provide that N. C. B. operate for any religious educational purposes, thereby eliminating it from the exemption set up in these statutes.

A religious educational institution serves the spiritual as well as the educational needs of the institution, the students, and the community, at considerable cost to the underlying religious society. A private educational institution such as N. C. B. serves only the temporal and educational needs of its students; it was initially created to make a profit and still maintains within its corporate structure a profit-making organization. These essential differences preserve the constitutionality of the statutes which exempt religious educational institutions from paying sales and use taxes.

Having held that these statutes do not violate constitutional prohibitions, we find no merit in N. C. B.'s other contentions. Accordingly, we affirm the circuit court's judgment which affirmed the findings of fact, conclusions of law, and order of the Secretary of Revenue.

All the Justices concur.